THE STATE *ex rel.* THOMAS WHITE, Appellant, v. OZIAS RUARK *et al.*, Judges, etc., Respondents.

St. Louis Court of Appeals, February 19, 1889.

1. **Local Option Law :** TIME OF ELECTION. An election ordered and held under the " local option law " ( Sess. Acts 1887, p. 179 ) will not be rendered invalid by the fact that a municipal or state election occurs within sixty days afterwards, when such municipal or state election was not, and could not have been, contemplated or anticipated until after the date of the local option election.

2.  **Local Option Law** : TIME OF ELECTION. An election under the local option law will be invalid, null and void, if appointed and held on a day more than forty days after receipt by the proper authorities of the petition for such election.

3.  **Mandamus** : LICENSE. *Mandamus* is the remedy to compel the issuance of a license by the proper officer, when the preliminary legal requisites have been complied with.

*Appeal from the Newton Circuit Court.*—HON. M. G. McGREGOR, Judge.

REVERSED AND REMANDED.

*A. J. Harbison* and *Joseph Cravens & Son*, for the appellant.

The record shows the petition for the election was received by the board of aldermen on the twenty-seventh day of June, 1887, and the election was ordered to be, and was, held August 9, 1887, being forty-three days after the receipt of the petition. The local option law ( section 2, Acts of 1887, page 179) says: " Such election shall be held within forty days after the receipt of said petition, but not within sixty days of any municipal or state election held in such city." The time fixed by law within which an election shall be held is mandatory and of the very essence of authority, and the board of aldermen went beyond the authority and power conferred by law, and the election was void. McCr. Elec. ( 2 Ed.) 125. Again said election is void for the reason that on the twelfth day of September, 1887, said board of aldermen ordered an election to be holden on the twenty-fourth day of September, 1887, to elect a city marshal, and also for the erection of water works in said city. These elections were so held, which was within sixty days of the local option election.

*T. R. Freeman* and *J. C. Geyer*, for the respondents.

The validity of an election cannot be tested in a *mandamus* proceeding. 2 Dill. Mun. Cor. (3 Ed.) section 892; High on Extraordinary Rem. (2 Ed.) secs. 53, 79; McCr. Elec. (2 Ed.) section 320; *Barnes v. Gottschalk*, 3 Mo. App. 111. The provisions of the city ordinance in regard to posting notices, and of the statute requiring the election to be held within forty days after the receipt of the petition praying therefor, are merely directory; and a failure strictly to observe them does not render proceedings under them void. Sedg. Stat. & Const. Law (Ed. 1857) 368, 376; McCr. Elect. (2 Ed.) secs. 119, 126, 200; *Dishon v. Smith*, 10 Iowa, 212. Unless they affect the actual merits of the election (which is not pretended in this case), the word "shall" is not necessarily mandatory. *State v. Pitts*, 58 Mo. 556. Unless followed in the statute by a nullifying clause on account of omission. *West v. Ross*, 53 Mo. 350. If the foregoing points are established then the election is valid in every step relating to it from the receipt of the petition up to and including the canvass of the returns and declaring the result. Can it be rendered void by an *ex-post facto* proceeding, like the election of a marshal, or a vote on water-works in this case—proceedings not thought of when the result of the local option election was declared, and not relating to it or connected with it in any manner? Such a conclusion is too absurd for serious discussion. The statute does not support such a view. If it did, courts would avoid it by a common-sense interpretation. *Heydenfeldt v. Mining Co.* 93 U. S. 634. Though it provides a penalty for its violation, the Wood local option law is a remedial statute, and should be liberally construed in favor of the advancement of the remedy intended. Sedg. on Stat. &

Const. Law, 360–362 ; *Betchel v. U. S.*, 101 U. S. 597 ; *Taylor v. U. S.*, 3 Howard, 197 ; *Cliquot v. U. S.*, 3 Wallace, 114 ; *U. S. v. Hodson*, 10 Wallace, 395 ; *Wilson v. Railroad*, 60 Mo. 184 ; *State v. Jones*, 8 Maryland, 88. The statute is enacted by virtue of the police power of the state and should be liberally construed. *State ex rel. v. Hudson*, 13 Mo. App. 61 ; *State ex rel. v. Hudson*, 78 Mo. 302 ; Sedg. Stat. & Const. Law, p. 507. Courts are anxious to sustain rather than to defeat the popular will. 1 Dill. Mun. Corp. ( 3 Ed.) section 197 and note ; McCr. Elect., sections 119, 126, 200 ; *Dishon v. Smith*, 10 Iowa, 212 ( 218).

BIGGS, J., delivered the opinion of the court.

This is a proceeding by *mandamus*, to compel the defendants as judges of the county court of Newton county, to issue to the relator, a license to keep a dramshop in the city of Neosho, in said county. The circuit court denied the peremptory writ, dismissed the proceedings, and the relator prosecutes this appeal.

The records of the county court of said county show, that under the dramshop law of the state, known as the "Downing Law," the relator was entitled to the license. But the defendants justified their refusal to grant the license, upon the ground that the city of Neosho, was a city of twenty-five hundred inhabitants, and that on the ninth day of August, 1887, at an election held for that purpose, the provisions of what is known as the "Wood Local Option Law," were adopted by a vote of a majority of the tax-paying citizens of said, city. That said local option law was then in force in said city, and that on account thereof, the defendants could not legally issue said license. The relator answering back said that said election was void ; ( 1 ) Because the election was not held within forty days after the reception of the petition for said election by the board of alderman of said city. ( 2 ) Because two special elections, to-wit : an election to fill a vacancy in the office of city marshal,

caused by the resignation of the acting city marshal on third day of September, 1887, and to vote a special tax for water works, were held within sixty days after the said local option election.  There were other irregularities in said election urged by relator, but we will only notice those mentioned.

That the special elections, referred to by relator were held within sixty days after the local option election, is a conceded fact.  But we cannot agree with the relator that on account of this, the local option election was rendered void and imperative.  Section two of the local option law provides, " that no election under said law shall be held within sixty days of any municipal or state election," etc.  The evident intention of the law making power of the state was to free the elections on the whisky question, from all partisan and local influences, and that such elections should be uninfluenced by the excitement aroused by other recent elections, or by contemplated elections.  But it is not every municipal or other election held within sixty days after a local option election, that will invalidate the latter.  If either one of said special elections have been ordered, or even contemplated at the time of the local option election, the relator's objection would have some force. But the record shows that the regularly elected city marshal did not resign for almost a month after the local option election, and there is nothing to show that the election on the water-works question was even contemplated until the twelfth day of September, 1887, which was more than a month after the local option election.  It would be judicial nonsense to hold that these subsequent elections, that were not even contemplated at the time, prevented a free expression of the will of the voters at the local option election. And this is not in conflict with the decision of this court in case *ex parte R. S. Woolridge*, 30 Mo. App. 612.  The facts in the two cases are different.

But the first objection made by relator presents a question of more difficulty. Section 2 of the local option law provides, that " an election shall be held within forty days after the receipt of the petition," etc. The facts in this case are "that the board of aldermen, of the city of Neosho, received the petition for said election on the twenty-seventh day of June, 1887, and the election was ordered for August 9, 1887, being forty-three days after the receipt of the petition." If this provision of the statute in regard to the time within which an election shall be held, is *directory merely*, then a failure to comply with it will not invalidate the election. But, on the other hand, if the statute is *mandatory*, then a failure, to *strictly comply* with the law in this respect, *does* invalidate the election. The question as to whether statutory provisions are directory or mandatory, has been the subject of much discussion and controversy, and without establishing any well-defined rule of general or universal application. In case of *People v. Cook*, 14 Barb. 259, the court undertook to formulate a general rule, as follows: "That the mode of procedure by a public officer in the holding of an election was merely directory, and not regarded as essential to the validity of the election, unless it be so declared by the statute." The supreme court of Kansas in case of *Jones v. State*, etc., 1 Kansas, 273, in commenting on this rule said, " that the intention of the legislature, to make such provisions essential, may appear as well by the general scope and policy of the statute, as by direct averment."

We think the New York rule is too narrow, and that the law of statutory interpretation, as declared by the Kansas court, is sustained by both reason and authority. The general rule is that the time and place of holding an election, and the legal qualification of the electors, are of the substance of an election, and a failure to observe the law, in respect to such matters, will

invalidate an election, while the provisions of the statute touching the recording the legal votes, etc., are directory. (McCrary Elect. [3 Ed.] sec. 193.) In order that a ballot in any election shall have any force or effect, it must be cast at an election held at a time and place either fixed by law or by the order of some one having authority. After the vote has once been legally cast, then any irregularities on the part of those conducting the details of the elections cannot deprive the citizen of the benefit of his vote. In discussing this question, the supreme court of California in case of *Dickey v. Hurlburt*, 5 Cal. 343, said in substance : that the time and place of holding every election are essential. When a statute itself did not fix the time for holding the election, but left it to be determined by an officer, who was disqualified under the constitution of said state from acting, that an election held, under the direction and authority of the person named, was null and void.

While the general rule is that the time for holding any election is essential, and that a failure to observe the requirements of the statute in this respect, would render the election invalid, yet if it appears, from the general scope and policy of the particular statute in question, that the contrary is intended, then the latter interpretation should prevail.

In the statute under consideration the legislature certainly had some good reason for embodying in it the provision that the proper authorities, when petitions were presented, should order elections within a certain time. We think that the legislative design was to prevent county courts and city councils from thwarting the operation of the law, either by failing to call an election, or fixing some day that would render the election invalid, because held within sixty days of some other state or municipal election. Therefore, we think, that the object was to place it within the power of the

friends of the law to compel county and city officials to order the election within the time prescribed. To hold that this statute is merely directory is to put it within the power of officials to practically nullify the law. Under the view we have taken of this case, we are compelled to hold that the election was void, and that the circuit court erred in refusing to grant a peremptory writ of *mandamus*, compelling defendants to issue to relator a dramshop license.

Counsel for defendants contend that *mandamus* is not the proper remedy in cases of this kind. This is untenable. *Mandamus* will lie to compel officers to perform duties which are purely ministerial. High on Ex. Rem. [2 Ed.] section 88, says: "When the power of granting license is lodged with a particular officer, as an official duty, and he is required by law to grant certain licenses to persons tendering sufficient surety and paying certain fees, his only discretion in the matter being as to the sufficiency of the surety, the writ (*mandamus*) will go against him to compel the performance of this ministerial duty."

For the reasons stated, the judgment is reversed and cause remanded; and the circuit court instructed to proceed in accordance with this opinion. All concur.