## ED CAIN v. THE STATE.

### No. 2250.  Decided June 29, 1900.

**1. Bill of Exceptions—Striking Out After Approval—Practice.**

Where an erroneous or incorrect bill of exceptions has been approved and filed, the trial court may, upon motion and after due notice during the term, subsequently strike out or correct the same, as the truth of the matter may require. The court has authority to make the matter appear of record as it actually occurred.

**2. Murder—Evidence—Acts and Declarations of Conspirators.**

Acts and declarations of conspirators to a murder, even though made prior to the homicide, are admissible against those subsequently entering into and participating in the homicide.

**3. Same—Charge.**

Where defendant's connection with a conspiracy to commit murder, as testified by the State's witnesses, consisted in part of his presence and participancy in a certain meeting where it was agreed to hang the deceased and which testimony was contradicted by defendant's witnesses, who testified to facts showing he was not present but was elsewhere at the time; Held, it was not error for the court to fail to charge upon alibi as to that particular occasion where the other evidence abundantly established defendant's connection with said conspiracy. Henderson, J., dissenting.

**4. Murder—Charge—"Malice Aforethought."**

On a trial for murder, where, in defining "malice aforethought," the court instructed the jury: "Malice aforethought is a term used in law to designate the wicked and mischievous intent with which a man willfully does a wrongful act, and it is to be inferred from acts committed and words spoken;" and, then followed this by an explanation of what constituted express malice; Held, the definition of "malice aforethought" was sufficiently clear and explicit, although not couched in the exact terms generally used and commended for such definition.

**5. Accomplice to Murder—Who Is.**

A party who enters into a conspiracy with others subsequently committing the murder is an accomplice to the murder, although he was not present at its commission. Henderson, J., dissenting.

APPEAL from the District Court of Anderson, on change of venue from Henderson County.  Tried below before Hon. A. D. LIPSCOMB.

Appeal from a conviction of accomplice to murder; penalty, imprisonment for life in the penitentiary.

The indictment, in two counts, charged appellant as an accomplice to the murder of Jim Humphries.

First count charges Joe and Walter Wilkerson and John Greenhaw with the murder of Jim Humphries, by hanging him with a rope to a tree, in Henderson County, on the 23d day of May, 1899; and that Ed. Cain, prior thereto, in Henderson County, on the 23d day of March, 1899, with malice aforethought, advised, commanded, and encouraged Wilkerson and Greenhaw to commit said offense, not being himself present at its commission.

The second count charges the same offense against all the parties named in the first count, but only charges Ed. Cain as agreeing with the principals to aid them in committing said offense.

This is a companion case to Bob Stevens v. State, ante, p. 154, and

the same preliminary questions with regard to the severance of the defendants and the order in which they should be tried, and questions pertaining to the change of venue, were presented in this as in that case, and the rulings of the court were the same as in the Stevens case. A reference to that case will also show the material facts in evidence and the material questions raised in both cases.

*Faulk & Faulk, Starr & Allison, E. B. Muse, J. S. Woods,* and *Stillwell H. Russell,* for appellant.

*N. B. Morris* and *Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted as an accomplice in the murder of Jim Humphries, and his punishment assessed at confinement in the penitentiary for life. The principals named in the indictment are Joe Wilkerson, Walter Wilkerson, and John Greenhaw.

The action of the court in changing the venue and refusing a severance has been treated in the companion case of Stevens v. State, ante, p. 154. It is unnecessary to discuss those features of this case.

The court approved a bill of exceptions which was filed as a part of the record. Subsequently, but during the term, this bill was stricken out by the court on the motion of the district attorney, and this is assigned as error. We believe it is competent for the court to alter, change, or strike out a bill of exceptions, although approved and filed, if upon a proper showing the bill appears to be untrue or erroneous. The court has the power, at least during term time, to make a record speak the truth; and if, through mistake or otherwise, a bill of exceptions is shown not to be truthful, or to certify facts and matters which did not occur, the court, upon proper notice to the interested parties, has authority to make the matter appear of record as it actually occurred. This is a very salutary rule for both sides. If this were not true, an erroneous bill of exceptions could bring irreparable injury to a defendant, and the court would be powerless to remedy the wrong. Of course, passing upon these matters, the court should give full notice and ample opportunity to both sides to be heard in regard to the proposed corrections. Some of our courts have gone so far as to hold that this can be done even in vacation. This may be seriously questioned, but, in our judgment, there is no question that the court has authority to make the record speak the truth during the term at which the matters occurred. See Conrad v. Walsh, 1 White & W. Civ. Cas. Court of App., sec. 231; 2 Thomp. Trials, sec. 2380; Railway v. Campbell (Texas Civ. App.), 34 S. W. Rep., 186; Railway v. Culberson, 72 Texas, 384; 3 Law. Rep. Ann., 567; Hamilton v. Burch, 28 Ind., 234; 3 Enc. Pl. and Prac., 503. The court certifies that notice of the motion was served upon defendant's counsel, and it is evident that such notice was

served because a lengthy protest to the action of the court was filed, and later on appellant sought to reopen the matter. The bill which formed the subject matter of the contest was reserved to the action of the court in permitting the State to prove acts and declarations of Joe Wilkerson and W. B. Brooks in regard to the Humphries prior to the homicide, and, it may be, before the conspiracy entered into to murder the Humphries. It is contended that these acts and declarations can not be used as evidence against those who subsequently came into the conspiracy. We are of opinion that, if the bill could be considered as originally given, this testimony was admissible against appellant. Stevens v. State, ante, p. 154; Casner v. State, ante, p. 118; Harris v. State, 31 Texas Crim. Rep., 411; Smith v. State, 21 Texas Crim. App., 102. It was also admissible against principals in the murder, Wilkerson and Brooks being two.

The failure of the court to instruct the jury with reference to the law of alibi is assigned as error. This is predicated upon the theory that the testimony of the State was contradicted as to the presence of appellant at the meeting "in the woods" when the agreement to hang the Humphries was under discussion. If this constituted the entire testimony with reference to appellant's connection with this matter, there might be some merit in the contention. Horton testified that he was present at this meeting, and there Cain proposed that he and Horton should induce the Humphries to leave their homes, in order that the mob might secure them for the purpose of executing the conspiracy. Greenhaw testified to a meeting, also in the woods, but at a different date; but the indication from his testimony, however, is that the hanging of the Humphries was not then discussed. Mrs. Chambers testified that in the spring, shortly before the homicide, Joe Wilkerson, one of the leaders of the mob, came to Kaufman County and spent the night with appellant. This was "during corn-planting time." He also visited appellant's house on Monday before the homicide on Tuesday night. Appellant's residence was some twelve or fifteen miles from the residence of the Humphries and the scene of the homicide. The homicide occurred near the residence of the Humphries. Smith testified that he lived in Kaufman County, a mile or two from appellant; that about the last of March or first of April, on Wednesday, appellant endeavored to persuade him "to go into the mob" for the purpose of hanging Jim, John, and George Humphries, naming Fayette Rains, John Greenhaw, Joe Wilkerson, Walter Wilkerson, Ben Boyd, John Thomas, Jenkins, and himself as the members of the mob. Appellant further stated that he and the others mentioned intended hanging the Humphries for stealing Joe Wilkerson's hogs and harboring one Patterson, a fugitive for the homicide of an officer in Henderson County. Under this testimony it was not error for the court to fail to charge on the law of alibi. Under this testimony the connection of appellant with the conspiracy in advance of the homicide is amply shown, independent of the meeting in the woods as testified by the witness Horton; and it

is not clear, if the court had selected the meeting in the woods, and applied the doctrine of alibi to that particular occurence, but that it would have intensified the testimony of Smith and Mrs. Chambers and Greenhaw against him on this proposition. Nor are we satisfied that it would not have been trenching upon very dangerous ground for appellant to have so selected the meeting testified by Horton as the evidence upon which to predicate the charge of alibi. The selection of this fact alone as a predicate for this charge, when other equally cogent facts remain, bearing on the same question, would tend strongly to intensify the force and effect of the remaining facts against the alibi. In any event, under this state of case, it was not error for the court to fail to charge on alibi.

It is strenuously insisted that the court's definition of "malice aforethought" is erroneous. That portion of the charge is as follows: "Every person, with a sound memory and discretion, who shall unlawfully kill any reasonable creature in being within this State, with malice aforethought, either expressed or implied, shall be deemed guilty of murder. All murder committed with express malice is murder of the first degree. 'Malice aforethought' is a term used in law to designate the wicked and mischievous intent with which a man willfully does a wrongful act, and it is to be inferred from acts committed or words spoken. Express malice exists where a murder is committed with sedate, deliberate mind on the part of the murderer, and in pursuance of a formed design to kill the person killed. The mind of the murderer need not be entirely free from excitement in order to bring it within the meaning of the term 'sedate and deliberate;' for, if it be in such condition as to admit of reflection upon the character of the act, then it is sedate and deliberate, within the meaning of the law." A proper definition of "malice aforethought" has been the subject of varied adjudications. As was said in Harris v. State, 8 Texas Criminal Appeals, 90, 109, "A perfectly exact and satisfactory definition of that term, signifying its legal acceptation in a form at once clear and concise, has been often attempted, but with no very satisfactory permanent result. The differing minds of different courts have employed different terms and language in the attempt to convey substantially the same meaning; and, while a general similarity is apparent in all the definitions, the legal mind has not yet crystallized the substance of the term into a terse sentence, readily comprehensible by the average juror. About as clear, comprehensive, and correct definition as the authorities afford is that 'malice is the condition of the mind which shows a heart regardless of social duty and fatally bent on mischief, the existence of which is inferred from acts committed or words spoken.'" This has been recognized as a correct definition by courts of last resort, and one which announces a true rule by which to measure malice under out statute of murder. Another equally correct rule is thus stated: "Malice, in its legal sense, means the intentional doing of a wrongful act towards another without legal justification or excuse." Each form has been em-

ployed in charges, and sometimes both have been embodied. It is wholly immaterial which is used, as they have been held to convey substantially the same idea. For a discussion of this matter, see Martinez v. State, 30 Texas Criminal Appeals, 129, and authorities there collated. It was said in that case: "Other language might be used to convey the same idea, and other words could be employed which would give a satisfactory definition of the term 'malice' as it is employed in the two forms above quoted." Applying these tests laid down by the authorities in this State in regard to the definition of "malice aforethought," we believe the charge given by the court is sufficiently clear and explicit. If " 'malice,' in its legal sense, means the intentional doing of a wrongful act towards another, without legal justification or excuse," is a sufficient definition of the term "malice aforethought," it occurs to us that the definition given by the court, to wit, " 'Malice aforethought' is the term in law to designate the wicked and mischievous intent with which a man willfully does a wrongful act, and it is to be inferred from acts committed or words spoken," is equally so. A comparison of the two definitions, in our opinion, demonstrates the correctness of this statement.

If appellant entered into the conspiracy with those who subsequently committed the murder upon the Humphries by hanging them, not being present at the hanging, he was and is guilty, under the charge in this indictment, as an accomplice. See the well-considered case of Whitford v. State, 24 Texas Crim. App., 489. The judgment is affirmed.

*Affirmed.*

HENDERSON, JUDGE.—I dissent from the views expressed by the majority of the court, upon the following grounds:

Appellant insists that the court should have charged, as to the meeting on Sanders' Branch, on Sunday night, of the defendant with Wilkerson and others, the principals in the homicide, that if said meeting was not for the purpose of hanging the Humphries, but merely for the purpose of co-operating with the officers to search for Patterson, the alleged murderer of Rhodes, to acquit appellant of being an accomplice in the homicide. His contention is based on the testimony of State's witness Arthur Greenhaw. I have examined the record carefully in this regard, and while Greenhaw puts said meeting about the 25th of March, and not on the 9th of April, as testified by Horton, still this was evidently the same meeting testified about by the State's witness Horton. The place and the parties named are the same, and it appears to be the only occasion in which State witnesses show that Ed. Cain was present and participated in any meeting. Horton says at this meeting that the proposition was made to hang the Humphries, and, from his testimony, that appears to have been the object of the meeting, while Greenhaw says that nothing was said abount hanging the Humphries, but the parties met there for the purpose of searching for Patterson; that they

were there to act as a posse comitatus, and wait for the constable to come, and when he did not put in appearance they all went home; that, if the Humphries were mentioned there that night, he did not remember it; that nothing was said about killing the Humphries. It occurs to me that on this meeting, and what was done there that night, the State planted its case, as against the appellant, Ed. Cain, and inasmuch as it was shown that the object of the meeting was not with reference to hanging the Humphries, but merely to search for Patterson, that this theory of appellant's defense should have been presented for the consideration of the jury; and it makes no difference in this respect that the testimony emanated from a State's witness.

Appellant complains that the court failed to instruct on the doctrine of alibi, insisting that the State's case, as against appellant, was mainly based on the meeting of appellant with Joe Wilkerson and others, who were principals in the homicide, at Sanders' Branch, about the last of March or the first of April, and his participation and acts at said meeting, and that, as to that occasion, appellant introduced evidence tending to show that he could not have been there, as testified by Horton and Greenhaw, but was then at another and different place. It occurs to me that appellant's contention is sound; that there was but one meeting shown by the testimony on the part of the State between appellant and the alleged principals in the homicide, and the State's case depends on the acts and conduct of appellant on that occasion. He proposed, inasmuch as he was a stranger, that he and Horton would go into the Humphries' house and get them out for the mob, as they were not likely to be identified. True, there is other testimony tending to show appellant's guilty knowledge, but all this evidently was introduced to bear on the transaction proven against appellant as having occurred at Sanders' Branch. For instance, the evidence of Joe Wilkerson's two visits to appellant, without this background, would have no significance; and the same can be said of Smith's testimony in regard to the confessions made by appellant to him. It will be observed that the indictment charges that appellant was an accomplice to the murder of Jim Humphries, because he advised and agreed with Joe and Walter Wilkerson and John Greenhaw to commit said murder, and the case was put to the jury by the court on the single predicate that appellant advised and agreed with Joe Wilkerson to commit said offense. Now, the only evidence of any advice or aid to Joe Wilkerson in regard to said offense was at the meeting on Sanders' Branch. True, the record shows confessions made to Smith that he was in the conspiracy to hang the Humphries, but he could not be convicted on these confessions alone, and they suggest no advice or aid to Joe Wilkerson to commit said murder. In other words, if the testimony of the accomplice in regard to the meeting at Sanders' Branch, and what appellant did there, is eliminated from the case, there is no case against defendant, and all the other testimony tending to incriminate appellant was evidently introduced by the State for the purpose of corroborating the accomplice wit-

ness as to what occurred between appellant and the principal conspirators at the meeting at Sanders' Branch in regard to mobbing the Humphries. If this be true, then it occurs to me that if appellant introduced evidence tending to show that at the time when said meeting occurred he was at another and different place, and could not have been there, a charge on alibi was required. Mrs. Chambers testified for the State that appellant was absent two nights from his home, which was some twelve or fifteen miles from the place of the homicide, about the last of March or the first of April; the meeting having occurred about 12 or 1 o'clock at night. Appellant attempted to account for his whereabouts on both of said occasions, and proved by witnesses that he was at certain houses in his immediate neighborhood, and at such time as rendered it reasonably impossible that he could have been at the meeting on Sanders' Branch. This testimony certainly has a tendency to meet the State's case on this question of presence at the alleged meeting on Sanders' Branch, and raises the issue of alibi, and I think the court should have instructed on that subject. It is no answer to this proposition to say, as said by the majority of the court, "that if the court had selected the meeting in the woods, and applied the doctrine of alibi to that particular occurrence, it would have been trenching upon dangerous ground," etc. The proof alone points to this meeting in the woods on Sanders' Branch as the State's case against appellant; and, besides this, he requested a charge on this particular phase of the case, and, of course, he could not be heard to complain. I understand the doctrine as announced by this court to be that where the defense of alibi is relied upon, and there is evidence tending to establish such issue, it is the duty of the court to instruct the jury on the subject. See White's Annotated Penal Code, section 1280, and authorities there cited; and, for late decisions on question, see Padron v. State, 41 Texas Criminal Reports, 548.

Appellant insists that the case should be reversed because of the failure of the court to give a charge properly defining "malice aforethought" and "express malice." I copy all the court said on that subject, as follows: "Every person, with a sound memory and discretion, who shall unlawfully kill any reasonable creature in being within this State, with malice aforethought, either expressed or implied, shall be deemed guilty of murder. All murder committed with express malice is murder of the first degree. 'Malice aforethought' is a term used in law to designate the wicked and mischievous intent with which a man willfully does a wrongful act, and it is to be inferred from acts committed or words spoken. Express malice exists where a murder is committed with sedate, deliberate mind on the part of the murderer, and in pursuance of a formed design to kill the person killed. The mind of the murderer need not be entirely free from excitement in order to bring it within the meaning of the terms 'sedate and deliberate;' for, if it be in such condition as to admit of reflection upon the character of the act, then it is sedate and deliberate, within the meaning of the

law." "Malice aforethought" is a term, under our law, which is distinctly applicable to murder and denotes the state of mind in which this most heinous of all offenses is committed. This term is of very ancient origin, sometimes called "malice prepense" or "malitia precogitata." It is treated by Coke and Hale, and was the subject of several English statutes. See the subject discussed in 3 Steph. Hist. Crim. Law Eng., pp. 40-56, inclusive; Steph. Crim. Law, p. 384; 1 Bish. Crim. Law, p. 429. Mr. Bishop suggests that "malice aforethought" means something more than malice. However the term was derived, as far as we are concerned it is an integral part of our law, pertinent to and definitive of the offense of murder. It has been held that an indictment which lacks the allegation that the homicide was committed with malice aforethought is bad. See McElroy v. State, 14 Texas Crim. App., 236; Cravey v. State, 36 Texas Crim. Rep., 90. It is also held that the charge of the court in a trial for murder must contain the definition of "malice," and that the giving of a definition of "express malice" will not cure the omission. See Crook v. State, 27 Texas Crim. App., 242. The jury in every case, under our statute, is required to find the degree of murder, and the court is required to give a charge to the jury defining the offense as applied to the facts proven. This means no more than that the court is to give the rules of law by which the jury are required to measure the offense. So far as we are advised, it is conceded that the terms "malice" and "malice aforethought" have a technical meaning not understood by the ordinary juror, and that consequently it is necessary for the court to define this term so that the jury may understand it. There does not appear to be any great difficulty in defining the term, and our courts have gone a long way in approving definitions of "malice" and "malice aforethought." Harris v. State, 8 Texas Crim. App., 90; Martinez v. State, 30 Texas Crim. App., 129; Harrell v. State, 39 Texas Crim. Rep., 204. Still it would appear that some apt definition is required. That most frequently employed is as follows: Malice is the intentional doing of a wrongful act without just cause or excuse, and denotes a heart totally devoid of social duty and fatally bent on mischief. We take it that any definition that substantially embodies the elements of malice as above stated would be a sufficient compliance with the law, in the charge given. But does the charge here given contain the substantial elements of the definition? The court tells the jury that "malice" "is a term used in law to designate the wicked and mischievous intent with which a man willfully does a wrongful act, and it is to be inferred from acts committed or words spoken." This is not as good a definition of the term as was used in Hayes v. State, 14 Texas Criminal Appeals, 330, and in that case Judge White held the definition insufficient. The case quotes the charge as follows: "Malice aforethought is the voluntary doing of a wrongful act, with the intent, means, and ability to accomplish the reasonable and probable consequences of it." This definition of "malice aforethought," say the court, is not correct. "Under it a party may commit a killing which would

be manslaughter only. The voluntary doing of an unlawful act, with the intent, means, and ability to accomplish the reasonable and probable consequences of it, would be manslaughter, if it was the result of sudden passion and upon an adequate cause, or it might apply as well to aggravated or simple assaults, or in fact any other felony or misdemeanor known to the Code, if the same is dependent upon act and intent, and which is not dependent for its criminality upon the existence of malice aforethought. 'Malice aforethought' means something in itself, and can not be a condition only which is equally applicable to most offenses other than murder." And in Cahn v. State, 27 Texas Criminal Appeals, 738, Judge Wilson, speaking of the charge of the court on malice, says: "The definition given in the charge is not correct. There may be a settled purpose and intention to seriously injure or destroy another, and yet no malice may exist in the mind of the person entertaining such purpose and intent." In Crook's case, 27 Texas Criminal Appeals, 198, the charge of the court is not given, but the court say: "In all trials for murder it is the imperative duty of the court to instruct the jury as to the meaning of 'malice' or 'malice aforethought.' It is fundamental error to omit such instruction, and a definition of 'express malice' will not cure the omission." In Martinez v. State, 30 Texas Criminal Appeals, 129, the term " 'malice' is defined as a condition of the mind which shows a heart regardless of social duty and fatally bent on mischief, the existence of which is inferred from acts committed or words spoken." In connection with this definition, "express" and "implied" malice were also fully defined. This was held sufficient. But I know of no case in which the charge here given, which attempted to define "malice," has been held a correct legal definition of that term. As stated before, this is not even as good an attempt at a definition as contained in the Hayes case, supra. The court said, " 'Malice' is a wicked and mischievous intent with which a man willfully does a wrongful act." Now, there are many acts that are wicked and mischievous which are not malicious; and there are many things that can be done willfully, and which are wrong, which are not done with malice aforethought, although with a wicked and mischievous intent. An act may be wrongful, but not unlawful; may be wicked and mischievous, but not done with malice. Indeed, this attempt at a definition is worse than no definition at all. "Malice aforethought" has a meaning, and the authorities hold that the jury must be told what this meaning is, in every trial for murder, and it occurs to me that we have gone quite far enough in upholding charges on this subject. Stevens v. State, ante, p. 154. But the charge in that case was far more complete than this, and contained the essential elements of the definition. As stated, even if the learned judge had given a sufficient charge on "express malice," it would not help out an abortive definition of "malice" or "malice aforethought." But the attempt to define "express malice" can only be cured by recurring to a former part of the charge. The judge says that murder upon express malice is where one with a sedate and deliberate mind kills an-

other.  He does not say in this connection that the killing must be unlawful, and we are compelled to go back to his definition of murder, which defines that offense as an unlawful killing, etc., to help out the definition of "express malice."  This method of arriving at a proper definition is of doubtful propriety.  I do not understand why in this instance the precedents should have been abandoned, and a new endeavor made to define the term "malice aforethought."  Nor can I agree to the contention that, inasmuch as the facts of the case only suggest a murder upon express malice, therefore it was not necessary that the court define the term "malice aforethought" at all.  To hold it was merely necessary to instruct the jury that if they believed Wilkerson and others hanged deceased Jim Humphries, and that defendant theretofore advised or agreed to the same, to find him guilty of being an accomplice to murder upon express malice was all that was required, would be to usurp the functions of the jury, and would be tantamount to authorizing the judge, after hearing the facts, if he was convinced that it was murder in the first degree, to instruct the jury to go out and find the defendant guilty of murder in the first degree.  Yet, as I understand the record, this is what we are requested to do in this case.  This is not in consonance with the spirit and genius of our law, which leaves to the jury the right to pass upon the facts, under appropriaate instructions for their guidance in measuring the guilt of the defendant on trial.  It may be important that those who engage in mobs, and thus take the law in their own hands, be brought to punishment, but I can not lend my sanction to the overthrow of the landmarks which have been set up for the protection of the innocent; and I believe it is of much more importance that the rules which safeguard jury trials and tend to secure a fair and impartial administration of the law be preserved.

[NOTE.—Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]