The plaintiff claims the election is void for three reasons. I will discuss these in the order as presented by counsel for the plaintiff.
First. Because the election was held more than thirty days after the filing of the petition.
The Brannock Law contains the following express provisions:
‘ ‘ Section 1. Whenever forty per cent, of the qualified electors of any residence district of any municipal corporation shall petition the mayor of such municipal corporation, or a common pleas judge of the county for the privilege to determine by ballot whether the sale of intoxicating liquor as a beverage shall be prohibited within the limits of such residence district, such mayor or common pleas judge shall order a special election to he held in not less than twenty and not more than thirty days from the filing of such petition with the mayor of the municipal corporation or common pleas judge of the county” (97 O. L., p. 87).
In the case at bar it is admitted that the election was held on the 11th day of July, 1904, or thirty-one days after the refiling of the petition and forty-one after the filing of the petition.
This issue in this cause depends upon what construction is put on the words of the statute “shall order a special election to be held in not less than twenty and not more than thirty days from the filing of such petition,” etc.
If this language of the statute is merely directory then the judge committed no error in ordering an election in thirty-one days or in forty-one days after the filing of the petition.
*566 If, however, the language of the statute is mandatory, then the judge did commit an error. Statutes similar to the one in question have been assailed in other states, and the question here involved is not a new one, and, although it has not been passed on by any court, in Ohio, it has been passed on by courts in other states.
In two cases, to-wit, In re Petition for an Election (Toledo), 2 N. P. — N. S., 469, and In re Petition for an Election (Bayton), 2 N. P. — N. S., 245, two common pleas judges, acting in a ministerial capacity, held the language limiting the time within which, the election shall be ordered in this act to be “directory merely.” But neither give any reason for-such an opinion nor do they cite any authority for their ruling.
I shall take up and quote liberally from the authorities upon this point.
“Statutes providing that the election shall be held within a certain number of days after the filing of the petition, or within a specified number of days after the making of the order for election are mandatory, and elections held after the expiration of such time are void.” 19 Am. & Eng. Ency. of Law, 503 (2d Ed.)
“An election held at a time other than that authorized by law is of no effect.” 19 Am. & Eng. Ency. of Law, 502 (2d Ed).
See Mo. Appeals, 325; McCrary, on Elections (3d Ed.), Sec. 193; 6 Nevada, p. 104; 92 Georgia, 309; 30 Mo. Appeals, 612; 59 S. W., 275; 49 Mo. Appeals, 407.
There can not be any question about the authorities. In answer to them, counsel for the city (Mr. Clark) presents arguments to which I now desire to direct attention and weigh beside these authorities. He says:
“There is not the slightest doubt of the correctness of plaintiff’s contention that where the Legislature has fixed the time for holding an election, elections held after that time are void. The proposition here is different. The Legislature has left it to the mayors of cities or judges of common pleas courts to fix the time for holding these elections and has directed that they be held not more than thirty days from the time of filing of the petition.”
*567 Very true. Then why not so hold them?
Again he says the Texas decisions are not in accord, and cites a case in the 2 Texas Reports, p. 217, as holding the contrary.. This case was decided in the year —■—, while the ease in 59 S. W. Rep., 275, was decided in 1900.
Again he says:
“The two cases from Missouri cited herein have no bearing whatever in this ease, as in each of these cases the law specifically forbade holding an election within sixty days of a municipal election; and it was because the elections violated these negative words of the Missouri statute, that they were declared invalid.”
In answer to this I quote from The State, ex rel White, v. Ruark et al, 34 Mo. App., 325:
“That the special elections referred to by relator were held within sixty days after the local option election is a conceded fact. But we can not agree with the relator that on account of this, the local election was rendered void and inoperative.”
Section 2 of the local option law provides, “that no election under said law shall be held within sixty days of any municipal or state election, ’ ’ etc. The evident intention of the law making power of the state was to free the elections on the whiskey question from all partisan and local influences, and that such elections should be uninfluenced by the excitement aroused by other recent elections or by contemplated elections. But it is not every municipal or other election held within sixty days after a local option election, that will invalidate the latter. If either one of said special elections have been ordered, or even, contemplated at the time of the local option election, the relator’s objection would have some force. But the record shows that the regularly elected city marshal did not resign for almost a month after the local option election, and there is nothing to show that the election on the water works question was even contemplated until the twelfth day of September, 1887, which was more than a month after the local option election. It would be judicial nonsense to hold that these subsequent elections, that were not even contemplated at the time, prevented a free expression of the will of the voters at the local option election. *568 And this is not in conflict with the decision of this court in case Ex parte B. S. Woolridge, 30 Mo. App., 612. The facts in the two cases are different.
Again he (counsel for the city) quotes from People v. Cook, 14 Barbour (N. Y.), 290, and claims that the' general rule is laid down by the New York court in that case, and that the rule should govern in the case at bar. The same quotation is made in The State, ex rel White, v. Ruark et al, Mo. App., 325, and the court in passing upon that case fully answers, in my judgment, this argument. Having quoted it supra (page 6) herein I shall not again quote the court’s opinion disposing of that rule in cases similar to the one at bar.
Again he says:
“To say that this rule is mandatory would be a dangerous holding for the court to make, for, if such is the case, it puts it within the power of any contrary mayor or stubborn judge to delay action until the thirty-day limit has been reached, and in that way defeat the will of the people.”
Counsel for the city in the statement just above quoted makes, in my judgment, the strongest possible argument against his cause and in favor of holding the language mandatory.
True, if the language is “merely directory,” a “contrary mayor” or a “stubborn judge” may “delay action until the thirty-day limit has been reached.” If this language is “merely directory,” this same “contrary mayor” and “stubborn judge” can do a good many things to defeat the election. He may order the election in eleven days; twenty-one days; forty days; one hundred days or three hundred days; considering the petition, he may forget to order an election at all. And now, suppose just such a state of facts were to arise, and that the language of the statute is, as counsel claims it to be, “merely directory,” what remedy have the petitioners against the “contrary mayor” or “stubborn judge”? Practically none (The State, ex rel White, v. Ruark et al, 34 Mo., App., 325; supra, p. 5, et seq.; also State of Nevada, ex rel Hess et al, v. County Com., etc., 6 Nev., p. 104). The whole statute is unmanned and the people left without a practical remedy. But, on the other hand, suppose the language of the statute is mandatory, and the *569 “contrary mayor” or the “stubborn judge” undertakes to unnecessarily delay or refuses to call an election, then what? He may be compelled by mandamus by the petitioners to order an election • as commanded to do by the statute.
Upon this point I again quote from The State of Nevada, ex rel Hess et al, v. The County Com. (supra):
“It would be straining the meaning of the words to'say that the ‘natural, ordinary interpretation of such language is as that sometime’ between twenty and thirty days from the filing of the petition such mayor or common pleas judge ‘should order an election to be held at any future time his discretion or caprice might dictate -, and yet this is the conclusion urged by counsel for the defendant.’ The language of the statute on this point is simple and plain; it is put in the act for a purpose; the purpose was that the electors should have a speedy method of determining the liquor problem about their homes and it should not be frittered away.”
If the contention of the defendant is correct, the statute might just as well read:
‘ ‘ Section 1. Whenever forty per cent, of the qualified electors of any residence district of any municipal corporation shall petition the mayor of such municipal corporation, or a common pleas judge of the county, for the privilege to determine'by ballot whether the sale of intoxicating liquor as a beverage shall be prohibited within the limits of such residence district, such mayor or common pleas judge shall order a special election to be held.”
Surely the framers of the “Brannock Law,” and the Legislature which passed it, intended that some meaning should be given to the words “in not less than twenty days and not more than thirty days from the filing of such petition”; they intended that the law should be operative, and that courts should so eontrue it as to make it not only operative but effective, and give the petitioners some remedy against any one seeking to obstruct its operation at'any point.
Second. After a petition is once filed can it be withdrawn; the boundaries of the district changed; a portion of the signatures erased, and then refiled as a new petition praying for an election in another district.
*570 In the case at bar the agreed stipulations show that after the blank petitions were circulated, and the signatures of the electors of the district obtained, they were returned to the committee, which wrote upon one of the blanks the description of a ■district, and then fastened all the blanks bearing the electors’ signatures together, and filed the same with the judge on June 1, 1904. Before the court had acted upon the petition, and fearing that the district as first described contained exempt territory, and without the consent of the electors (see record) who had signed the same, some members of the committee got the petition from the judge, changed the district by eliminating the exempt territory, and on the same, day, to-wit, June 10, 1904, refiled the petition with the same judge, and thereupon the judge ordered the election.
It is apparent from the record and the testimony that the ■committee had full power from the electors to describe a district •on the blank petitions and to file the petition with the judge.
But I am of the opinion that the instant the committee filed the petition with the judge, it exhausted its power and authority, and that it had no power or authority to afterwards withdraw or change the petition. When a petition is filed with the mayor or judge under this act, but one of two fates must happen to it. It must be either dismissed, because, for some reason, it fails to make a prima facie case for an election, or the election must be ordered as provided by the statute. The filing of the petition sets in motion the machinery under this act, and from that moment the law, and not individuals nor committees, controls.
It is quite true that persons, before the mayor or judge have acted, may add their names to or withdraw their names from the petition (42 0. S., 215). The adding of names to the petition after filing, if the petition already contained the requisite forty per cent, of the signatures would not in law have any effect whatever; if a sufficient number withdraw their names to reduce the percentage below the required forty per cent., the petition would, of course, have to be dismissed, and I take it that the reason for not allowing persons to withdraw their names after action had been taken, is that they are estopped; they have sinned away their day of grace; they did not speak *571 •when they ought to have spoken," and will not afterwards be heard to speak.
Gumble & Gumble, for plaintiff.
James M. Butler and Thomas H. Ciarle, for defendant.
But this proposition is very different one from a person of persons or a committee, without authority, withdrawing a petition; changing it materially and then refiling it as an original petition. Such a proceeding is not contemplated by the Brannock Law, nor by any other principle of law with which I am familiar.
The judges of the common pleas court of this county have since ruled that petitions can not be withdrawn for any purpose after filing.
It is claimed by counsel that this case does not apply to the case at bar for the reason that the court had ordered an election before the petition was withdrawn. But the court rescinded its action in ordering an election and afterwards the petition .was withdrawn. After the court had rescinded its action the case stood as though no action had been taken, and, in my opinion, is quite like the case at bar, and the same rule should apply.
The third contention of plaintiff is disposed of in answering the second proposition.
In view of the authorities herein cited and the facts, I am constrained to set aside the election in this case and to declare the same void.