### FOSTER BELL v. THE STATE.

No. 8067. Delivered Jan. 7, 1925.

**1.—Assault to Murder—Principal's Acts and Declarations—Admissible Against All.**

All parties acting together in the commission of an offense are principals, and the prior acts of any or all of them, showing ill will, animus or intent to harm the injured party will be competent evidence upon the trial of any one of them. There was a concert of action between appellant, his brothers, Miller, and the others, as was shown by the State's proof. Mr. Wharton says: "Where the concert of action is once established, all the facts and circumstances which preceded, and connectedly led up to the homicide, are relevant." 2nd Wharton Crim. Ev., p. 1732. The testimony complained of by appellant was properly admitted.

**2.—Same—Evidence—of Harmless Character.**

The testimony of Earnest Schaffner, that he came up town on the night of the killing, that he had a date with a girl, excepted to by appellant, was harmless; and established no purpose on his part to seek a difficulty with appellant, nor does it appear that the fact that he was on his way to see a girl in any wise induced Luther Bell to shoot at him, or John Miller to cut him.

**3.—Same—Evidence—Introduction of Clothing Worn—Held, Proper.**

It was not error to permit the State to introduce the coat worn by Earnest Schaffner, at the time of the difficulty. Such testimony was admitted for the purpose of showing the character and size of the weapon used, by the location and size of the holes in the coat.

**4.—Same—Witness—Impeachment of—Contradictory Statements.**

One who testifies as to statements made by appellant, as a witness for him, may be impeached by showing her relation of such statements, when such relation took place out of the presence of the accused. One who asks questions of a witness, for the purpose of laying a predicate for impeachment, does not thereby make the witness his own, and is not thereby debarred from contradicting such witness.

Appeal from a conviction for an assault to murder, punishment, five years in the penitentiary.

Appeal from the District Court of Travis County. Tried below before the Honorable James R. Hamilton, Judge.

*Mathis, Heidingsfelder, Teague & Kahn,* of Houston; *J. E. Edmondson, C. R. Johnson, W. I. Hill,* of Bellville; *D. J. Pickle,* and *Harris Bell,* of Austin, for appellant.

*C. G. Krueger, Dan Moody,* District Attorney, and *John E. Shelton, Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the Criminal District Court of Travis county of assault to murder, and his punishment fixed at five years in the penitentiary.

Earnest Schaffner was badly cut on the night of September 5, 1922, by John Miller. A fight was in progress on the streets of Sealy, Texas, which, according to the State, was begun by an assault on the father of young Schaffner by appellant, appellant's two brothers, John Miller and other parties. From the State's testimony said parties made a joint attack upon the old gentleman. Earnest ran up to aid his father and, according to his testimony, was shot at by Luther Bell, a brother of appellant, and stabbed by Miller. When the melee ended Luther Bell, Tommie Bell, Robert Schaffner and his father F. C. Schaffner were all dead or fatally wounded. Venue of his case was transferred to Travis county where this conviction was had.

There are five bills of exception. The point in the first two is the same and we discuss them together. All parties acting together in the

commission of an offense are principals, and the prior acts of any or all of them showing ill-will, animus or intent to harm the injured party will be competent evidence upon the trial of any one of them. Cain v. State, 42 Texas Crim. Rep., 210; Stevens v. State, 42 Texas Crim. Rep., 154; Blain v. State, 33 Texas Crim. Rep., 247; Baker v. State, 45 Texas Crim. Rep., 392; Smith v. State, 48 Texas Crim. Rep., 241; White v. State, 60 Texas Crim. Rep., 563. That there was concert of action between appellant, his brothers, Miller and the others is fully shown by the State's proof. Mr. Wharton says: "When the concert of action is once established, all the facts and circumstances which preceded and connectedly lead up to the homicide, are relevant." 2d Wharton Crim. Ev., p. 1732. Tommie Bell had hot words with Robert Schaffner some time before the killing, and had a fight with him on the day of the homicide, some hours before. After the fight he telephoned from Sealy where he lived and where the killing occurred, to Bellville where appellant and Luther Bell lived. Shortly after the telephone message appellant and Luther Bell with other parties got in a car and went to Sealy, and soon after their arrival the three Bells, Miller, et al. made an attack on old man Schaffner who was on the street. Robert Schaffner went at once to the parties, and was killed. Earnest also ran up and as above stated, was shot at by one of the party and cut by another. Many authorities are cited in Sec. 693 of Branch's Ann. P. C. supporting the proposition that it makes no difference when one becomes a party to an illegal acting together with others to commit an offense; all those things theretofore done or said by any one of them, shedding light on the transaction so unitedly carried out, become admissible on the trial of each or all the others. This disposes of appellant's complainant in bills of exception Nos. 5 and 6, presenting objections to statements made by one of the Bells showing hostility toward Robert Schaffner; and a threat made by Miller against old man Schaffner.

One complaint is leveled at the action of the lower court in permitting Earnest Schaffner to testify that when he came up town on the night of the killing, he had a date with a girl. We do not agree that the rule rejecting proof of undisclosed motives on the part of deceased, or the injured party, has application. Such rule applies when the deceased or the injured party is doing something which in some way produces the occasion or brings on the difficulty causing the homicide or injury. There is no contention that the mere fact that Earnest Schaffner was on the street at the place, or that he was on his way to see a girl in anywise induced Luther Bell to shoot at him or John Miller to cut him. That which caused the attack upon Schaffner, according to the State's theory, was his going to the assistance of his father and thus taking part in the difficulty. We see no more ground for the objection made than would have obtained if Schaffner had testified that he was on his way to church or to a dance or to some place of business

when the row began between his father and the others, in which he participated in behalf of his father.

The objection to the introduction of the coat worn by Earnest Schaffner at the time of the difficulty is without merit as we understand the facts; and especially so in view of the qualification to the bill of exceptions by the trial court to the effect that the coat was allowed in testimony for the purpose of showing the character and size of the weapon used by the location and size of the holes in the coat.

Miss Johnson, a defense witness, testified that she was present at the home of appellant in Bellville when he got there after the difficulty and met his mother. She said that she was about eight feet distant from the parties and that appellant's mother met him at the door and said: "Foster, is it so, is Luther dead? Did they kill him?" to which appellant replied, "Hush mother. Oh my God. Yes. He died like a man." Miss Johnson also testified that appellant did not then say to his mother, "Mamma I got my man." On cross-examination this witness was asked if it was not a fact that when appellant went upon the porch of his home, she was standing at the gate in front of her own house with Mrs. Hoffman and Mrs. Louwein, and if appellant did not say to his mother that he got his man, and if witness did not say to Mrs. Louwein, "Did you hear that,—he said 'I got my man.'" Miss Johnson categorically denied these matters. In its rebuttal testimony the State introduced Mrs. Louwein and Mrs. Bolton both of whom swore that they were at the gate of the home of Miss Johnson when appellant reached his home after the homicide; that Miss Johnson was with them and that when appellant said something to his mother, Miss Johnson said, "Did you hear that? Foster said he got his man." The ground of objection to this testimony was that it was an attempt to prove by Mrs. Bolton what Miss Johnson said, and was hearsay, something that transpired in the absence of the appellant, and was the remark of a bystander. We do not think the objections to have merit. If Miss Johnson had been unquestionably in the home of appellant when he arrived, and had been introduced by the defense to prove his declaration when he met his mother, and had then gone to her home or any other place and there made statements as to what he said different from those given by her in her direct testimony, she could have been impeached upon proper predicate by proving that she made statements at variance with her testimony as given, and this entirely regardless of whether appellant was present and heard such statements or not. One who testifies to statements made by the appellant as a witness for him, may be impeached by proof of her relation of what his statements were when such relation took place out of the presence and hearing of the accused. We are not in harmony with appellant's contention as made in his brief that one who asks questions of a witness for the purpose of laying a predicate thereby makes the witness his own and is barred from contradicting the answers and showing their

falsity. See authorities cited under Sec. 179 of Mr. Branch's Ann. P. C. Finding no error in the record, the judgment will be affirmed.

*Affirmed.*