# THE STATE ex rel. WAGNER et al. v. PATTERSON et al.

**In Banc, November 27, 1907.**

1. **SHERIFF: Vacancy: Election.** Both by the Constitution and statutes when a vacancy occurs in the office of sheriff more than nine months prior to the next general election, the county court must immediately call a special election to fill the vacancy. And the statutes providing for such special election, it is unnecessary to determine whether the constitutional provision is self-enforcing or not.

2. **STATUTE: Amendment by General Revision.** If the words found in a revised bill were taken from the Constitution, then the revised bill did not repeal or amend a prior statute containing the same words and other additional provisions.

3. ———: ———: **Words at End.** That section 8187 of the Revised Statutes of 1899 did not amend the Act of 1887 is indicated by the words "(R. S. 1879, sec. 3893, amended)" placed at the end of the section by the revision committee.

4. **SCOPE OF REVISED BILL: Omitted Sections of Prior Statute: Sheriff: Vacancy: Special Election.** In 1887 the Legislature enacted a statute of five sections which provided (1) that whenever any vacancy shall happen in the office of sheriff nine months prior to the next general election "the county court shall immediately order that a special election be held to fill such vacancy," (2) that "such election shall be held within thirty days after the vacancy occurs," (3) that a special meeting of the court, if not in session, should be called by the presiding judge, to order said election, (4) that the county court should appoint some person to fill the vacancy until the special election, and (5) repealing all inconsistent acts. At that time Sec. 3893, R. S. 1879, providing how, "whenever, from any cause, the office of sheriff becomes vacant," process could be served while said vacancy continued, was in force, and in 1889 a section (8187, R. S. 1889) was included in a revised bill which said that "whenever, from any cause, the office of sheriff shall become vacant, the same shall be filled by the county court; if such vacancy happen more than nine months prior to the time of holding a general election, such county court shall immediately order a special election to fill the same, and the person by it appointed shall hold until the person

207 Sup.—9

chosen at such election shall qualify, otherwise the person appointed shall hold until the next general election," followed by the provisions of said section 3893, R. S. 1879, in reference to serving process while the vacancy continued. The law of 1889 concerning the force of revised statutes provided that "all acts of a general nature, revised and amended and reenacted at the present session, shall be taken and construed as repealing all prior laws relating to the same subject." *Held*, first, that the revised bill of 1899 "revised, amended and reenacted" only entire acts, and not parts of acts; *second*, the omission in section 8187 of the revised bill of all reference to sections two and three of the Act of 1887 is significant as indicating the purpose of the Legislature, not to revise that act, but Sec. 3893, R. S. 1879; *third*, sections two and three of the Act of 1887, providing in express words that the county court should order a special election and when it should be held, were not repealed or revised or amended by Sec. 8187, R. S. 1889, and are still in force; and, *fourth*, even if Sec. 8187 was meant to be and was a revision of the Act of 1887, which is not conceded, then it and the act were *in pari materia*, and Sec. 8187 did not include and repeal by implication sections two and three of the Act of 1887 by reenacting sections one and four thereof.

5. ————: **Omitted Sections: Inconsistent.** The omissions of certain sections of an existing law from a revised bill does not repeal those sections, if they and the revised bill are not inconsistent or repugnant. To be repealed by implication the revision must include the whole subject of the prior enactment.

6. **SPECIAL ELECTION: Expiration of Prescribed Time.** Where the statute directs the county court to call a special election to fill a vacancy in the office of sheriff within thirty days after the vacancy occurs, and the court has either neglected or refused to call it until the thirty days have expired, it cannot defeat mandamus by showing that the time has expired, but the Supreme Court will compel it to call an election within a designated time.

7. **JURISDICTION: Loss of by Inferior Court: Power of Supreme Court.** The power of superintendency over all inferior courts given the Supreme Court by the Constitution, and the power to issue its writs of *mandamus, certiorari* and other original writs, were expressly given in order that it may compel an inferior court to exercise a jurisdiction which it is required by law to exercise but which it has lost because of neglect or refusal to exercise it within a prescribed time.

State ex rel. v. Patterson.

8. **SHERIFF: Vacancy: Special Election: Provisions.** The act of 1887 and the general election laws, both of which are in force, furnish a complete scheme for the holding of a special election to fill a vacancy in the office of sheriff.

## Mandamus.

PEREMPTORY WRIT AWARDED.

*J. G. L. Harvey, Frank P. Walsh, James A. Reed, Sam B. Strother, W. D. Jameson* and *Virgil Conkling* for relators.

(1)   Section 8187, Revised Statutes 1889, does not repeal the Act of 1887. It was not repealed by implication by the revision of 1889. State ex rel. v. Spencer, 164 Mo. 48. Repeals by implication are not favored. Manker v. Faulhaber, 94 Mo. 430; State ex rel. v. Macon County Court, 41 Mo. 453; State ex rel. v. Slover, 134 Mo. 10. A later statute will not repeal a prior one unless there is such repugnancy between them that the two cannot stand together or be consistently reconciled. Glasgow v. Lindell, 50 Mo. 60; Railroad v. Cass County, 53 Mo. 17; State ex rel. v. Dolan, 93 Mo. 467; Kansas City v. Smart, 128 Mo. 272; State ex rel. v. Walbridge, 119 Mo. 383; State ex rel. v. Wofford, 121 Mo. 61; State ex rel. v. Stratton, 136 Mo. 423. Applying these principles to the case at bar, it is apparent that every requirement of the new sections of the revision of 1899 can be fully complied with and that the ten days' notice, required now and before these new sections of the law were enacted can be given. So that there is no repugnancy or conflict between the old and the new provisions of the law. State ex rel. v. Draper, 47 Mo. 29; Manker v. Faulhaber, 94 Mo. 430; State ex rel. v. Slover, 134 Mo. 10.   (2)   Section 8187, Revised Statutes 1889 (10048, 1899), independent of other legislation, provides for a special election to fill a vacancy in the office of sheriff. 26 Am. and Eng. Ency. Law (2 Ed.), 613; 10 Ib., 691; Wells v. Taylor, 5 Mont. 202; People

v. Dutcher, 56 Ill. 147; Rodwell v. Rowland, 137 N. C. 617; State ex rel. v. Burbridge, 24 Fla. 112; McCrary on Elections (4 Ed.), secs. 86, 196.

*Chas. W. German* and *Clyde Taylor* for respondents.

(1)  The law of 1887 regulating special election has been repealed by the revision of 1889. Sec. 6606, R. S. 1889; State ex rel. v. Wardell, 153 Mo. 325.  (2) If such law of 1887 is still in force, the special election cannot be ordered, for the reason that the time provided by that law, within which such election shall be held, has elapsed.  Hess v. Washoe, 6 Nev. 104; Boone v. State, 10 Tex. App. 418; 6 Am. and Eng. Ency. Law, 794; State ex rel. v. Jenkins, 43 Mo. 261; State ex rel. v. Ruark, 34 Mo. App. 325; State v. Webb, 49 Mo. App. 407; In re Wooldridge, 30 Mo. App. 612; State ex rel. v. Bowerman, 40 Mo. App. 576; State ex inf. v. Dabbs, 182 Mo. 367.  (3)  The general election laws do not put in force the non-self-enforcing constitutional provision, for the reason that:  1st.  Such general election laws do not of their own force apply to a special election.  Arts. 1 and 2, chap. 102, R. S. 1899; Broom's Legal Maxims (7 Ed.), p. 439.  2nd. Even though the general election laws apply, they do not provide sufficient machinery for the holding of this special election.  Notice, legally authorized and regulated, is essential to the machinery regulating a special election.  No notice for this special election is provided for, either by analogy from the general election laws or otherwise.  McPike v. Penn, 51 Mo. 64; State v. Railroad, 75 Mo. 526; State ex rel. v. Martin, 83 Mo. App. 58; State ex rel. v. Tucker, 32 Mo. App. 627; Bean v. Barton Co. Ct., 33 Mo. App. 642.

WOODSON, J.—This is an original proceeding, instituted in this court on October 22, 1907, by the relators against the respondents, praying for the is-

State ex rel. v. Patterson.

suance of an alternative writ of mandamus. The writ was duly issued and made returnable on the 28th day of the same month.

The alternative writ alleged, in substance, that Charles P. Baldwin, the sheriff of Jackson county, Missouri, died on September 23, 1907, thereby leaving a vacancy in that office; that, under the laws of this state, it thereupon became the duty of respondents, as judges of the county court of that county, to fill said vacancy temporarily by appointing a successor to said office, and to immediately order a special election to elect some one to fill the vacancy until the next general election; that respondents filled the vacancy by temporary appointment, but failed and refused to order the special election.

Upon the return day respondents filed their return, setting out at much length various reasons why they failed and refused to call the election, which are unnecessary to be repeated in this statement; but the substance of the return was that there is no law in this State providing for the holding of the said special election, and that they had been enjoined by the circuit court of Jackson county from ordering the same.

To this return there was a demurrer filed by relators.

For the purpose of a speedy hearing in this court, it was stated, in open court, that while the circuit court of Jackson county had orally announced its decree enjoining the respondents from ordering the election, yet the decree was withheld and not spread of record for the express purpose of permitting this court to pass upon the legal propositions in the case, untrammeled by the decree of injunction. Under this admission we feel at liberty to proceed with the case.

So, the sole question presented to this court for determination is one of law, and that is, does the law of this State provide for the legal machinery for hold-

ing a special election to fill the vacancy in the sheriff's office? In order to correctly determine that proposition, it calls for a review and the interpretation of the constitutional and statutory provisions of the State bearing upon that subject.

The Constitution of 1820 of this State, article 4, section 24, provided that vacancies in the office of sheriff should be filled by appointment by the Governor, and that the appointee should continue in office until his successor should be duly qualified.

The Constitution of 1865, article 5, section 23, changed the manner of filling vacancies in the office of sheriff by providing as follows:

"Whenever a vacancy shall happen in the office of sheriff or coroner, the same shall be filled by the county court. If such vacancy happen in the office of sheriff more than nine months prior to the time of holding a general election, such county court shall immediately order a special election to fill the same; and the person by it appointed shall hold office until the person chosen at such election shall be duly qualified; otherwise the person appointed by such county court shall hold office until the person chosen at such general election shall be duly qualified. . . . "

Article 9, section 11, of the Constitution of 1875, is a verbatim copy of the above section from the Constitution of 1865.

It will serve to throw some light upon the legal proposition involved herein to give a brief history of the legislation upon the question under the constitutional provisions before mentioned.

The first statute enacted thereunder was section 15, chapter 25, page 157, General Statutes 1865, and was as follows:

"Whenever, from any cause, the office of sheriff becomes vacant, while such vacancy continues, any writ or process, directed to the said sheriff, and in

his hands at the time such vacancy occurs, remaining unexecuted, and any writ or process issued after such vacancy, may be served by any person selected by the plaintiff, his agent or attorney, at the risk of such plaintiff; and the clerk of any court out of which such writ or process shall issue, shall indorse on such writ or process the authority to such person to execute and return the same, and shall state on such indorsement that the authority thus given is 'at the request and risk of the plaintiff;' and the person so named in said writ or process may proceed to execute and return said process, as sheriffs are, by the law, required to do.''

It will be observed that this statute made no provision for filling vacancies in the office of sheriff, but provided simply for the service of process by private persons during such vacancy.

The same section was carried bodily into Wagner's Statutes of 1872, and is section 15 of chapter 126 thereof.

The same statute was again carried forward into the revision of 1879, and is section 3893.

The first specific legislation upon the subject of filling vacancies in the office of sheriff was passed in 1887, and is found in the Laws of 1887, page 281, and is as follows:

''SHERIFFS: VACANCY, HOW FILLED.

''An act to provide for the election or appointment of sheriff in any county, whenever any vacancy may occur nine months prior to the holding of a general election.

''*Be it enacted by the General Assembly of the State of Missouri, as follows*:

''Section 1.    That whenever any vacancy shall happen in the office of sheriff in any county in this State nine months prior to the time of holding a general election in such county, the county court thereof

State ex rel. v. Patterson.

shall immediately order that a special election be held to fill such vacancy.

"Section 2. Such election shall be held within thirty days after the vacancy occurs, and the county court shall cause notice of the same to be published in some newspaper published within the county, and if there should be no newspaper published in said county, shall then give notice, by ten. written handbills, posted up in ten of the most public places in the county, for twenty days prior to the day of holding such election.

"Sec. 3. Upon the occurrence of such vacancy, it shall be the duty of the presiding justice of the county court, if such court be not then in session, to call a special term thereof, and cause said election to be held in pursuance of the provisions of this act, and the election laws regulating general elections in this State.

"Sec. 4. The county court shall have power to fill such vacancy by appointment, and the person appointed shall hold office until the person chosen at a special election, as herein provided, shall be duly elected and qualified.

"Sec. 5. All acts and parts of acts inconsistent herewith are hereby repealed."

It is unnecessary for a proper determination of this cause to pass upon the question as to whether or not the constitutional provision mentioned is self-enforcing or not, because the first section of the act of 1887 gives legislative command to the constitutional requirements. Both the constitutional provision of 1875, before mentioned, and the act of 1887, in express terms, provide that whenever any vacancy shall occur in the office of sheriff nine months before the time for holding the general election, the county court *shall immediately order a special election* to be held to fill such vacancy. The act then requires that the election

shall be held within thirty days, and provides for the time and manner of giving notice of the intended election, and says that it shall be held according to the provisions of that act and the general laws then in force governing general elections of the State, and finally provides for filling the vacancy in the office until the person chosen at the special election is elected and qualified.

Section 3893, Revised Statutes 1879, before mentioned, was amended and revised, and is now section 8187, Revised Statutes 1889, and reads as follows:

"SEC. 8187.    VACANCY IN OFFICE—HOW FILLED—PRIVATE PERSON MAY EXECUTE PROCESS, WHEN.—Whenever, from any cause, the office of sheriff becomes vacant, the same shall be filled by the county court; if such vacancy happen more than nine months prior to the time of holding a general election, such county court shall immediately order a special election to fill the same, and the person by it appointed shall hold said office until the person chosen at such election shall be duly qualified, otherwise the person appointed by such county court shall hold office until the person chosen at such general election shall be duly qualified; but while such vacancy continues, any writ or process directed to the said sheriff and in his hands at the time such vacancy occurs, remaining unexecuted, and any writ or process issued after such vacancy, may be served by any person selected by the plaintiff, his agent or attorney, at the risk of such plaintiff; and the clerk of any court out of which such writ or process shall issue shall indorse on such writ or process the authority to such person to execute and return the same, and shall state on such indorsement that the authority thus given is 'at the request and risk of the plaintiff;' and the person so named in said writ or process may proceed to execute and return

said process, as sheriffs are by the law required to do. (R. S. 1879, sec. 3893, amended.)''

As we proceed it should be borne in mind that this section in the language of the Constitution commands that in case of any vacancy in the office of sheriff, the county court shall fill the same, and then provides that if such vacancy in said office occurs more than nine months prior to the time of holding a general election, such court *shall immediately order a special election to fill the same,* and that the person appointed shall hold office until his successor shall be elected and qualified.

It will be noticed that section 8187, above quoted, says, in the language of the constitutional provision, that the county court *shall immediately order* a special election, but entirely ignores the requirements of the Act of 1887, to the effect that thirty days notice should be given of the special election, and that the election should be held according to the Act of 1887 and the laws governing general elections.

The revision of 1889, section 6606, reads as follows:

''All *acts* of a general nature, *revised and amended and re-enacted* at the present session of the General Assembly, as soon as such acts shall take effect, shall be taken and construed as repealing all prior laws relating to the same subject.''

Section 8187, before mentioned, was brought forward without change into the revision of 1899, and is section 10,048.

We have thus given a brief history of all the constitutional provisions and legislative enactments regarding the filling of vacancies in the office of sheriff. It will be seen from this history that the importance of this subject was so great that the people of the State in 1865, and then again in 1875, incorporated into the Constitution the section before quoted regarding such vacancies; but for some unexplained

reasons each and every legislature from 1865 down to 1885 refused or neglected to enact any law putting into force that constitutional provision or providing any legal machinery by which a special election could be held thereunder. In 1887, however, the Legislature finally harkened unto the voice of the people, who had been calling unto it for twenty-two long years in the most solemn and unmistakable terms, to enact proper laws to carry into effect the mandate of their Constitution; and, in pursuance to that command, it passed the Act of 1887. Counsel for relators contend that said act is still in full force and effect, except in so far as sections one and four thereof are amended by section 8187, Revised Statutes 1889, which is the same as section 10048, Revised Statutes 1899. While upon the other hand, the respondents contend that the entire Act of 1887 is repealed in express terms by section 6606, before mentioned. The basis for this last contention is, that the Legislature amended sections one and four of the Act of 1887 and for that reason the entire act comes within the meaning of said section 6606, which is as follows:

"All *acts* of a general nature, *revised and amended and re-enacted* at the present session of the General Assembly, as soon as such acts shall take effect, shall be taken and construed as repealing all prior laws *relating* to the *same subject.*"

In this connection it should be borne in mind that there is nothing whatever to indicate that section 8187, Revised Statutes 1889, was a revision of the Act of 1887, except that it contains the language of sections one and four thereof, which is in the same language as the constitutional provision of 1875, before mentioned, but from which of the two it was taken there is no means of ascertaining. If taken from the Constitution, then the Act of 1887 is not repealed either in express terms nor by implication; but as counsel for

relators in oral argument seemed to concede that said section 8187 was an amendment of the Act of 1887, we will proceed to consider the case upon that assumption; yet we are by no means satisfied that counsel for relators are correct in that concession, for the reason, not only that it fails to mention the Act of 1887, but, also, because it is stated at the end of the section that said section 3893 was amended in the following words: "(R. S. 1879, sec. 3893, amended)" which would exclude the idea that the Act of 1887 was amended, which was not passed until eight years after section 3893 was enacted. If the Act of 1887 was amended, it looks as though the reference which was made at the time by the revision committee would have been to that act and not to said section.

Counsel for respondents concede that the Act of 1887 is not repealed by implication, and in that concession we concur, as hereinafter stated; but they base their contention upon a repeal of the act in express terms.

Now, let us analyze section 6606, and ascertain its real meaning. To what act does it refer? "All *acts* of a general nature, *revised, and amended and re-enacted* at the present session," etc., shall be repealed. Was the Act of 1887 *revised and amended and re-enacted?* It should be noticed that the section does not provide that all *acts and parts of acts,* which are the general and usual words employed when the entire act is intended to be repealed, but uses the word *acts,* which clearly means the whole or entire act, and not mere *parts of an act.*

Again, was the entire act revised and amended and re-enacted? A glance at the Act of 1887 and to section 10,048, Revised Statutes 1899, will show that it only amends sections one and four thereof, and in no manner mentions sections two and three of the act,

which exclusively provide for the manner and means of holding the special election to fill the vacancy.

And if it had been the purpose and intention of the Legislature to include the entire Act of 1887 in section 6606, and not simply sections one and four thereof, then why did the Legislature in the very same session *revise and amend and re-enact* those two sections which expressly command the county court, when the vacancy occurs nine months before the general election, to "immediately order a special election to fill the same?"

What would be the sense or object of the Legislature, in one breath, to command the county court to immediately order a special election to fill the vacancy, and in the very next breath repeal the only law on the statute books under which it was possible to hold the election? To place such a construction upon section 6606 would be convicting the Legislature of doing a vain and foolish thing. It defeats the very object and purpose it had in amending sections one and four of the act.

This court has held that where even the language of a statute leads to a manifest contradiction of the apparent purpose of the enactment, a construction may be put upon it which modifies the literal meaning of the words. [Cole v. Skrainka, 105 Mo. 303.]

The case of Sales v. Barber Asphalt Co., 166 Mo. 671, involved the construction of the following statutes and acts: Section 5537, Revised Statutes 1899, relating to Cities of the Second Class, provides that, "In all such cities there shall be a city clerk, city engineer, city assessor, city counselor and city comptroller, who shall be appointed by the mayor, . . . and who shall perform such duties as may be prescribed by this article or any ordinance of the city." This section has been in force ever since 1889, and was repealed by an act of 1901 (Laws 1901, p. 60), which in lieu thereof

enacted the following section, and gave it the same number as the repealed section, to-wit: "In all such cities there shall be a city clerk, city assessor and city counselor, who shall be appointed by the mayor, . . . and who shall perform such duties as may be prescribed by this article or any ordinance of the city."

The principal difference between the two sections is in the latter the words "city engineer" are omitted therefrom.

The same act of 1901 repealed section 5538 of the same chapter of Revised Statutes 1899, and enacted as a substitute a section of like number. That relates to and creates the offices of city attorney, judge of police court, city auditor, city treasurer and city comptroller; and concludes with the following words: "There shall also be such other officers, servants and agents of the corporation as may be provided by ordinance, who shall perform such duties as may be prescribed by ordinance."

The Act of 1901 also repealed section 5548 of the same chapter of Revised Statutes 1899, and enacted a new section in lieu thereof which relates to the duties of the comptroller, and is a duplicate of the repealed section. The foregoing were all of the sections of Revised Statutes 1899 as related to cities of the second class which were repealed by the Act of 1901, but it did not mention section 5541, Revised Statutes 1899, which was in the same chapter with the other sections. That section was as follows:

"Section 5541. CITY ENGINEER. The city engineer shall superintend the construction of all public works ordered by the common council; shall make out plans, specifications and estimates thereof, and do the surveying and engineering ordered by the city, and perform such other duties as may be prescribed by ordinance."

From this brief statement of the legislation, it will be seen that the office of city engineer was re-

pealed by the Act of 1901, but left untouched the duties
he was to perform; but by another act of 1901 (Laws
1901, p. 75, sec. 5), the Legislature confers upon the
board of public works, which was created by that act,
the authority to appoint a city engineer.   The point
was made that the board had no such power, because
the office of city engineer had been repealed by the
previous act in express terms, and that said section
5541, which prescribed his powers and duties, was re-
pealed by necessary implication, and was so held by
this court in State ex inf. v. Rackliffe, 164 Mo. 453.
But when the same question again came before this
court in the case of Sales v. Barber Asphalt Paving
Co., 166 Mo. 671, the former opinion was reversed in
so far as it related to said section 5541, and it was held
that said section was not repealed by the Act of 1901,
but that it was still in full force and effect, notwith-
standing the office of city engineer had been repealed.
And in order to reach that conclusion this court held
that, by omitting to repeal section 5541, which pre-
scribed the powers and duties of the engineer, taken
in connection with the act of 1901, and construed to-
gether *in pari materia,* it was not in fact the intention
of the Legislature to even abolish the office of city en-
gineer, but simply change the appointing power from
the mayor to that of the board of public works.

And in reaching that conclusion SHERWOOD, J.,
said: "Now, if there is anything well settled in stat-
utory construction it is this, that where a repealing
statute expressly repeals certain sections of a statute
by numbers, or a specified portion of another act, or
even repeals one clause of a certain section, it follows
that in the judgment of the Legislature no further re-
peal was necessary or intended.   [Sutherland on Stat.
Construction, sec. 327; State v. Morrow, 20 Mo. l. c.
141.]   If the Legislature had intended to have abolished
the office of city engineer altogether, they surely would

not, while and when repealing other and adjacent sections on the same and the next preceding pages, have omitted to repeal by number section 5541 which prescribed the duties of such officer. And we may summon further aids and further rules of statutory construction in following after the meaning of the Legislature in the present case. Thus the rule *in pari materia* is applicable here. 'All consistent statutes relating to the same subject, and hence briefly called statutes *in pari materia*, are treated prospectively and construed together as though they constituted one act. This is true where the acts relating to the same subject were passed at different dates, separated by long or short intervals, at the same session or on the same day.' [Sutherland, Stat. Construction, sec. 283.] And 'A statute must be construed with reference to the system of which it forms a part. And statutes on cognate subjects may be referred to, though not strictly *in pari materia.*' [Id., sec. 284.]"

In the Rackliffe case the very statute creating the office of city engineer was named and numbered and repealed in express terms, yet when the whole act of 1901, taken together with the chapter relating to cities of the second class, and both construed *in pari materia,* can it be doubted that the conclusions reached by this court in that case were correct? We think not. Then *a fortiori* it can be argued that section 6606, Revised Statutes 1889, did not include and repeal by implication sections two and three of the Act of 1887 by re-enacting sections one and four thereof, which require the election to be held, while the two former prescribe the mode and manner of holding it. Such a construction gives full force and effect to the entire act, while the contention of the respondents would nullify the entire act, including the two sections which were re-enacted. The Legislature never intended to do such a vain and use-

less thing.  And especially is that true when we consider the fact that the Legislature had in mind and were writing into the very statute they were enacting the constitutional command that such an election *"shall be held."*

The language of section 6606 is no broader nor more comprehensive in its scope than the rule of construction many times enunciated by this court to govern in the construction of an act where the whole subject-matter of a previous law is covered by a later act.

That rule is, a statute is impliedly repealed by a subsequent one revising the *whole subject-matter* of the first, and intending to substitute the latter for the former.  [State to use v. Hickman, 84 Mo. l. c. 79; State v. Roller, 77 Mo. l. c. 129; Smith v. State, 14 Mo. 152; State v. Summers, 142 Mo. 586, l. c. 595; Meriwether v. Love, 167 Mo. l. c. 521.]

But who ever before heard that the amendment or repeal of one or more sections of a statute repealed the entire chapter upon the subject-matter, and especially where the principal amendment consists of a re-enactment of the sections amended, and not their repeal?

There is nothing inconsistent in the two acts, and as was said by this court in the case of State ex rel. Folk v. Spencer, 164 Mo. l. c. 54:  "If two statutes can be read together without contradiction or repugnancy or absurdity or unreasonableness, they should be read together and effect given to both; and a later will not repeal a prior one unless there is such repugnancy between them that the two cannot stand together or be consistently reconciled."

The rule just announced is the same one this court applies to repeals and amendments by general revision bills, and cite the same class of authorities in support

thereof.   [Yall v. Gillham, 187 Mo. l. c. 405; Kern v.
Legion of Honor, 167 Mo. 471.]

But it is contended by learned counsel for respond-
ents that the rule governing repeals by implication
has no application to section 6606, and that it repeals,
if at all, the Act of 1887, by express terms.   In answer
to that contention, it may be stated that in one sense
that is true, but in another it is not true.   In the sense
in which respondents' counsel treats the matter, the
act is repealed, if at all, in express terms; that is, if sec-
tion 6606, Revised Statutes 1889, refers to and includes
all the Act of 1887, including the sections not mentioned,
then it is repealed by express terms; but if it does not
include sections two and three of the Act of 1887, in the
sense in which we have indicated, then it does not re-
peal the act at all.

We are, therefore, of the opinion that those sec-
tions were not repealed but are in full force and ef-
fect.

II.   Respondents next insist that even though the
Act of 1887 is unrepealed and still in full force and
effect, yet the special election required by law to be
held cannot be ordered, for the reason the time within
which the act prescribed that it should be held has ex-
pired.

In support of that contention counsel cite us to
cases from this and other states, where the county
court voluntarily or through mistake ordered the elec-
tion to be held on a day that was either short of the
time prescribed by the statute or in excess of that time.
Among which are the following:   In re Wooldridge,
30 Mo. App. 612; State ex rel. v. Bowerman, 40 Mo.
App. 576; State ex inf. v. Dabbs, 182 Mo. l. c. 367; State
v. Webb, 49 Mo. App. 407; State ex rel. v. Ruark, 34
Mo. App. 325; State ex rel. v. Jenkins, 43 Mo. 261;
6 Am. & Eng. Ency. Law, 794; Boone v. State, 10 Tex.
App. 418; State ex rel. Hess v. Commrs., 6 Nev. 104.

In each of those cases the election was held in pursuance to the order and notice given, which was either too short of the time prescribed by the statute or was not held within the proper time. Those cases were clearly decided correctly, because the courts were acting outside and beyond their respective jurisdictions, and consequently their orders were null and void. This is true for the reason that a court of limited jurisdiction, and inferior courts not proceeding according to the course of the common law, are confined strictly to the authority given; and the records of such courts must show the existence of all the facts necessary to give jurisdiction. [State v. Metzger, 26 Mo. 65; Sturgeon v. Hampton, 88 Mo. 203.]

The same is true where courts of general jurisdiction are exercising special powers conferred by statute, and the manner of procedure is specifically provided for. [Gray v. Railroad, 81 Mo. 126.] And upon that principle the circuit court has no power or jurisdiction to make an order after the expiration of the time within which the statute commands it to be made. According to this rule a circuit court has no power to sign, seal or order filed a bill of exceptions in a cause after the expiration of the time within which the statute says those things must be done. [Cartwright v. Liberty Telephone Co., 205 Mo. 126.]

While that is the well-settled law of this State, yet it by no means follows therefrom that this court does not possess the power to compel such courts to perform such duties where they refuse or neglect to do so, even after the expiration of that time. Section 3 of article 6 of the Constitution provides that, "The Supreme Court shall have a general superintending control over all inferior courts. It shall have power to issue writs of *mandamus* . . . *certiorari* and other original writs, and to hear and determine the same." The very object and purpose of conferring

those powers upon this court was to compel such courts to act when they refused. and to keep them within their respective jurisdictions, where an appeal or writ of error does not lie.

In the case of State ex rel. v. Gibson, 187 Mo. 536, this court, by mandamus, required defendant therein to sign a bill of exceptions in a cause after the expiration of the time when he should have done so under the statute. There are many other cases in the State to the same effect.

So it is thus seen that, because the court whose duty it was in the first instance to make the order, has lost the power and jurisdiction to do so, is no reason why this court may not require it to proceed and make the order at a later date than that fixed by the statute. Otherwise, it would be within the power of such courts to place at defiance the laws of the State by simply waiting until the expiration of the time within which they had the power and jurisdiction to act in the premises.

III. The next contention of respondents is that the general election laws do not apply to special elections to be held to fill vacancies in the office of sheriff.

These laws are found in articles 1 and 2, chapter 102, Revised Statutes 1899. These two articles provide for a complete scheme for holding general elections over the State, including Jackson county, and if we read into them the Act of 1887, which provides that such special election shall be held in pursuance of the provisions of that act and the general election laws of the State, then we have a complete scheme for holding the special election mentioned.

There was no question but what that was true prior to the revision of 1889, which amended the Act of 1887, and if we are correct in our views that the Act of 1887, as amended by the Act of 1889, is still in force, then by parity of reasoning the laws governing general

elections, as found in said articles one and two, taken in connection with the Act of 1887, furnish the same complete scheme for holding special elections at the present time—this, we presume, will not be questioned.

IV.   During the oral argument of the cause some question was raised as to whether or not the general primary election laws enacted in 1907 (Laws 1907, pp. 263 to 270) would apply to this election, if ordered.

In reply to that suggestion, we will state that section one of that act expressly exempts from its operation all special elections to be held to fill vacancies in office, which, of course, includes those held to fill vacancies in the office of sheriff.

We are, therefore, of the opinion that the peremptory writ should be awarded, and it is so ordered.

All concur.