## THE STATE ex rel. HAMMER, Collector, Appellant, v. WIGGINS FERRY COMPANY.

### Division Two, December 24, 1907.

1. **STATUTES: In Pari Materia.** The true intent of the Legislature is to be ascertained by construing together all statutes bearing on the one subject in controversy.

2. ———: ———: **In Reference to Railroads.** In order to ascertain what railroads are by the statutes intended to be assessed by the State Board of Equalization, sections 1163, 9338, 9339, and 9344, Revised Statutes 1899, are to be construed together.

3. ———: ———: **Railroads: Taxation.** For the purpose of being assessed by the State Board of Equalization for taxation, railroads include not only railroads "owned, hired or leased by railroad companies or corporations," but "all corporations, companies or individuals owning or operating, or which may hereafter own or operate, any railroad in this State."

4. ———: ———: ———: ———: **Wiggins Ferry Company.** The statutes (Secs. 9338, 9339 and 9344, when construed in connection with Sec. 1163, R. S. 1899) authorize the State Board of Equalization to assess as railroad property belonging to a ferry company across the Mississippi river, 3.702 miles of roadbed, switches, superstructure, rolling stock and "all other property" in St. Louis, owned nominally by a railroad transfer company, whose stock belonged wholly to the ferry company, which used the railroad property in connection with its ferry business.

5. **RAILROAD: Storage Tracks.** Where the tracks, used in connection with defendant's ferry business, are not simply loading or storage tracks upon which cars are stored while being loaded or unloaded, preparatory to or before being ferried across the Mississippi river, but are used not only for these purposes, but also for regular traffic and switching purposes from the river to and from railroad termini, they constitute a railroad.

6. ———: **By Whom Owned.** There is nothing in our statutes, nor in the definition of a railroad, which excludes the idea that a railroad may not be constructed, owned or operated by persons other than a railroad corporation.

7. ———: **Tax Assessment: Ferry Company: Interstate Traffic.** The State is not prohibited by the Constitution and laws of the United States from taxing the property located in this State of corporations engaged in foreign or interstate commerce—for instance, a ferry company engaged in transporting freight across the Mississippi river between Illinois and Missouri.

8. ———: ———: ———: ———: **Franchise.** A tax assessed by the State of Missouri against the franchise of a ferry company engaged in interstate commerce, being a tax against its charter right and privilege to conduct a ferry business across the Mississippi river between Illinois and Missouri, is invalid, since it is a tax imposed by a State upon interstate commerce.

9. ———: ———: ———: ———: ———: **Intangible Property.** Nor can the value of the franchise of the ferry company be included in the estimation of the value of the intangible property belonging to the subsidiary railroad company in this State whose stock the ferry company owned. But the proportional value of the rights and privileges of the three companies (namely, the ferry company, and its two subsidiary railroad companies, one in Illinois and the other in Missouri, which nominally owned railroad tracks in their respective States, but whose stock was owned by the defendant ferry company), acting in unison as one company, to construct, maintain and operate a system of railroad in this State, in connection with and as a part of a system in the other State, may be included in the valuation upon which the tax assessment is based.

10. ———: ———: ———: ———: ———: **How Estimated.** In estimating the value of the intangible property of a railroad in this State operated by a ferry company in connection with its interstate traffic, it is proper, and the only way in which its true value may be reached, to take into consideration

State ex rel. v. Wiggins Ferry Co.

not only the rights and privileges the company is exercising in this State and the property here located, but also its connection with and relation to other property not located in this State, but which is used in the system of work with the property which is taxable in this State.

11. ———: ———: **Evidence.** Evidence offered by the tax collector for the purpose of showing that the defendant ferry company owned all the stock of the two railroad companies whose tracks were used by defendant in connection with its ferry business, the purpose of the suit being to collect a taxbill for the railroad property located in this State and nominally owned by one of the railroad companies, is competent.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood*, Judge.

REVERSED AND REMANDED.

*Johnson, Houts, Marlatt & Hawes* for appellant.

(1) The State Board of Equalization had jurisdiction under the provisions of article 8, chapter 149, Revised Statutes 1899, to assess defendant corporation if it was operating a railroad. 1. Section 1163, Revised Statutes 1899, defines a railroad corporation to mean "all corporations, companies or individuals owning or operating a railroad." 2. Similarly comprehensive definitions are generally adopted by statutes of other States. 3. Many sections of the Missouri statutes contemplate ownership and operation of railroads by individuals and companies other than those organized under railroad corporation acts. Secs. 1062-1067, 1083, 1092-1094, 1096-1098, R. S. 1899. 4. Individuals and private companies may own and operate railways. Amos Kent Lbr. & Brick Co. v. Tax Assessor, 114 La. Ann. 864; 23 Am. and Eng. Ency. Law (2 Ed.), 674; Mitchell v. Township of Lake, 126 Mich. 367; Improvement Co. v. Slack, 100 U. S. 648; Williams v. Bettle, 50 N. J. L. 132; Beach v. Wakefield, 107 Iowa 567. 5. The Legislature has defined "per-

son" to include corporation, company or firm.    Sec.
9123, R. S. 1899.    6.  Even without legislative defini-
tion the term "railroad company" would include any
individual or company owning or operating a railroad.
Railroad v. DeBusk, 12 Colo. 304; Moran v. Ross, 79
Cal. 163.    (2)  These tracks constitute a railroad with-
in the meaning of article 8, chapter 149, Revised Stat-
utes 1899.'  1.  Railroad defined:    Pierce, Railroads,
p. 2; Doughty v. Fairbank, 10 Q. B. D. 359; Bouvier's
Dictionary.    2.  A railroad need not be of any definite
length, nor go beyond the limits of a city nor haul any-
thing besides freight cars.    Wiggins Ferry Co. v. Rail-
road, 107 Ill. 458.    3.  These tracks are used just as the
tracks of the Transfer Railway and East St. Louis
Connecting Railway are, which are admittedly rail-
roads.    4.  It is not essential that railroad own roll-
ing stock.    1 Elliott, Railroads, p. 7; Railroad v. Rail-
road, 118 U. S. 290.    5.  The name of a corporation
is immaterial; the question is, what does it do?  Union
Trust Co. v. Kendall, 20 Kan. 515.    6.  Whatever
does a railroad's work is a railroad.    Amos Kent
Lbr. & Brick Co. v. Tax Assessor, 114 La. Ann. 864;
Mitchell v. Township of Lake, 126 Mich. 367; Fort
Street Union Depot Co. v. Commissioner, 118 Mich.
340; Beach v. Wakefield, 107 Iowa 382; Railroad v.
Irvin, 72 Ill. 432; Williams v. Bettle, 50 N. J. L. 132;
Sams v. Railroad, 174 Mo. 68; Regina v. Newport
Dock Co., 31 L. J. M. C. 266.    7.  The evidence shows
that the Wiggins Ferry Company owns and controls
the St. Louis Transfer Railway and therefore oper-
ates those tracks jointly with those of the Transfer
Railway.    Courts will disregard corporate fictions to
get at the real facts.    Buie v. Railroad, 65 S. W. 30.
(3)    The assessment of "all other property men-
tioned in the Laws of 1901, section 2, page 232," was
entirely legal.    Western Union Tel. Co. v. Gottlieb,

190 U. S. 424; State ex rel. v. Western Union Tel. Co., 165 Mo. 502.

*J. E. McKeighan* for respondent.

(1) Defendant not only has the legal right to transfer loaded and empty freight cars across the Mississippi river at St. Louis, but it is its legal duty to do so. Wiggins Ferry Co. v. Railroad, 73 Mo. 413. It is a familiar rule of taxation that tax statutes are strictly construed against the government, and are to be strictly pursued by the officers of the government who act under them. There is no such thing as an equitable or liberal construction of a statute creating a tax, or providing for its assessment or collection. State v. St. Louis County Court, 13 Mo. App. 53, 84 Mo. 224. No authority was or is conferred upon the State Board of Equalization to assess the tracks in question. The State Board of Equalization, under sections 9338, 9339 and 9344, Revised Statutes 1899, is only authorized to assess railroad tracks owned by a railroad company or corporation, and constituting a railroad within the common and general acceptance of that word. The tracks in question were owned by defendant as a ferry company, as a means of performing its ferry duties in the transportation of loaded and empty freight cars across the Mississippi river, and merely as incidental to its main business, as a ferry company, and did not establish defendant ferry company as a railroad company or corporation, within the meaning of the sections cited. State ex rel. v. Stone, 119 Mo. 668; State ex rel. v. Railroad, 97 Mo. 348. (2) The franchise of the Wiggins Ferry Company to operate a ferry across the Mississippi river cannot be attached to the tracks in question, since the Ferry Company is incorporated by the laws of the State of Illinois, and its franchise cannot be assessed or taxed in the State of Missouri. McCullough v.

Maryland, 4 Wheat. 316; Lewis v. Pacific Mail S. S. Co., 17 How. 599; St. Louis v. Wiggins Ferry Co., 11 Wall. 423; Morgan v. Parkham, 16 Wall. 471; Louisville Ferry Co. v. Kentucky, 138 U. S. 385.   The situs of the franchise of the Wiggins Ferry Company, defendant, was in Illinois and not in Missouri.   Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 126; St. Clair County v. Interstate Sand & Car Co., 192 U. S. 454.

FOX, P. J.—This is an action which was instituted in the circuit court of the city of St. Louis, by the State at the relation of the collector of the revenue of said city, to collect certain taxes assessed by the State Board of Equalization against three and seven hundred and two one-thousandths miles of railroad tracks, owned and used by the Wiggins Ferry Company, in the city of St. Louis.   A jury was waived, and the cause was tried by the court; the finding and judgment of the court were for the defendant, and the plaintiff duly prosecuted its appeal to this court.

There is no dispute about the facts of the case, except in one particular, which will hereafter be mentioned in paragraph two of this opinion, and they are substantially as follows:

The defendant, The Wiggins Ferry Company (which will hereafter be called the Ferry Company), is a corporation, and was duly incorporated under the laws of the State of Illinois on the 11th day of February, 1853, and was empowered, among other things, as follows:

"4.   To survey and lay off said lands, or any part thereof, into blocks, lots, streets and alleys, and grade and pave said streets and alleys, or any part thereof, and to lay off and dedicate to public use, grounds for market places, schools, churches and parks, and to sell, lease and donate any part of said lands, in such

manner and upon such terms as said company may deem proper, and execute conveyances for the same, and to subscribe for, take and buy and hold, and sell stock in any railroad or plank or turnpike road company, and issue bonds bearing such rate of interest, and payable at such times and places as the company may think proper, not exceeding one hundred thousand dollars.

"5.    To keep a ferry or ferries at and from any point or points on said lands, across the Mississippi river, to St. Louis, in the State of Missouri, and to remove the same from place to place on said lands as necessity or convenience may require, and use boats or other crafts propelled by steam, heat, or other power, and possess, use and enjoy all the rights, privileges, franchises and emoluments recited in the preamble of this act as having been heretofore granted to the said Samuel Wiggins, his heirs and assigns, on and from the lands to be purchased as herein provided for and generally to do and perform all things in reference to the ownership, control, management, use and disposition of said ferry franchise, ferry and lands, and of the business carried on thereat, which a natural person might or could do."

Under the powers thus granted, the defendant, either by purchase or lease, acquired real estate on the east and west banks of the Mississippi river, at the points designated in its charter, for wharves and landing purposes.    At first the Ferry Company, by means of boats, engaged in the carriage and transfer of freight and passengers over the Mississippi river, without the intervention of railroads and cars, and received and discharged same at the aforesaid wharves.    In the course of time the public demands upon the defendant were such as to require it, in addition to the duties it was then performing, to handle and transfer freight over the river in car load

lots.    This new demand necessitated the construction and operation of a railroad at each end of the ferry —one in Illinois and one in Missouri.    In order to meet this new condition, the Ferry Company organized and incorporated, or has organized and incorporated, under the laws of Illinois, the East St. Louis Connecting Railway Company (which will hereafter be called the Connecting Company), and under the laws of Missouri, the St. Louis Transfer Railway Company (which will hereafter be designated the Transfer Company); the Ferry Company owning all the stock of both of said railway companies. - Each of these railway companies constructed tracks connecting the east and west termini of the ferry with the various railroads and other business institutions which terminate at or which are located near said termini.    In addition to those tracks, the Transfer Company constructed a number of switch tracks, side tracks and storage tracks on the Missouri side of the river.

When this system or scheme was completed, the Connecting Company, by means of its engines, would receive from other railroads all cars of freight destined to St. Louis *via* the ferry, and would haul them over its tracks and deliver them to the Ferry Company, which company would receive and transfer them, in boats, across the Mississippi river to St. Louis, where they were delivered to the Transfer Company.    The latter company would receive and deliver them to the various railroads and business institutions to which they were consigned.

The car lots of freight destined from St. Louis to East St. Louis *via* the Ferry Company went through the same routine as those from East St. Louis to St. Louis, but was first received by the Transfer Company, and by it delivered to the Ferry Company, and by that company transferred across the river and de-

livered to the Connecting Company, and by it to the various railroads or to the consignees.

The following extract from the testimony of Mr. A. C. Church, former vice-president of the Ferry Company, will throw much light upon the system under which the business of these three companies was conducted, to-wit:

"Mr. JOHNSON: I will ask you, Mr. Church, to tell us in what way the compensation from one company to the other was charged upon the books of the company?

"Mr. RALSTON: That's objected to as incompetent and immaterial and not embraced in any issue in this case.

"THE COURT: Mr. Church, as I understand it, the Wiggins Ferry Company received pay from the St. Louis Transfer Railway Company for cars hauled over whatever tracks it owned? A. The Wiggins Ferry, Judge, would bring them across the river, and then the Transfer Railway Company would receive pay for hauling them from the boat to the railroad or the warehouse or destination they were to go to. The charge was the amount paid by the shipper all in a lump. As far as the Wiggins and the Transfer Railway Company were concerned, it was out of one pocket and into the other, and it made no difference whatever as to what they charged as among each other. The Wiggins Ferry Company, the Transfer Railway and the Connecting Railway, while three separate and distinct corporations, were one interest and owned by the same people.

"Q. Well, you mean that the stockholders of all three were the same? A. I mean, Judge, that originally the Ferry Company had no railroads at all. The East St. Louis Connecting Railway was first built on the east side of the river. It was fathered by the Ferry Company and built to take care of its business.

Then followed a similar railroad on this side. The railroads belonged to the Ferry Company, it was the parent corporation and the treasury of the three companies was one.

"Q. Well, were these two railroad companies incorporated under a separate and distinct charter? A. Oh, yes, sir; they are distinct organizations, separate and distinct, and they were run just as if they had no connection with the others. Each one could stand on its own bottom separately, but, of course, they were one harmonious system, and each intended to help the other."

If we correctly understand the evidence, the 3.702 miles of railroad in question is what is termed switching, loading and storage tracks, which at one time belonged to the Transfer Company and was by it conveyed to the Ferry Company. This was prior to the time the taxes in question were levied; but, however that may be, the Ferry Company owned the road in question prior to and at the time the levy was made. The road is composed of many short, standard gauge tracks, upon and over which steam engines and freight cars are constantly being operated and handled, as before stated.

The Ferry Company owned no cars, engines, turn tables, nor water tanks. It employed the Transfer Company to handle, switch, receive and deliver all its freight on the west side of the river, which was done over its own tracks and those of the Ferry Company. The former company has engines but no cars, except two push cars, worth thirty dollars; nor has it any tracks extending to the water's edge, connecting immediately with the ferry.

The Ferry Company, working in harmony with the two railroad companies mentioned, handles and transfers across the river a large part of the interstate

commerce between Missouri and Illinois, at the points named.

There is no question raised as to the regularity of the assessment of the taxes in question; but the power to make the assessment is denied.

The State Board of Equalization assessed and equalized the value of the rolling-stock, roadbed, and superstructure and "all other property" mentioned in Laws of 1901, section 2, page 232, per mile, and the aggregate value of the buildings of the following railroad and railway companies on the first day of June, 1900, for the taxes of 1901, and, after having heard all the evidence in regard to the same, by unanimous vote fixed the distributable value, per mile, of the rolling-stock, roadbed and superstructure, "all other property," and the aggregate value of buildings of said railroads and railways as follows:

The valuation of the Wiggins Ferry Company's railroad tracks per mile was as follows:

| Name of Line. | Mileage. | Value of Buildings. | Value per Mile of rolling-stock. | Value per Mile of road-bed. | Value per Mile all other property. | Total Distributable value per mile. |
|---|---|---|---|---|---|---|
| Wiggins Ferry Co.'s Railroad tracks ..... | 3.702 | ...... | ....... | 35,000 | 30,000 | 65,000 |

The defendant introduced evidence tending to prove that the $30,000 item appearing in the above table was assessed against the franchise of the Ferry Company—that is, the right to conduct a ferry across the Mississippi river between East St. Louis and the city of St. Louis.

Plaintiff then introduced in evidence the record of the State Board of Equalization for 1901, showing the proceedings of the board in fixing the total valuation for purposes of assessment of the railroad tracks of the Wiggins Ferry Company:

"The secretary laid before the board the tables of valuations of all railroads, bridges and telegraph companies, as apportioned to the counties and municipal divisions thereof and the city of St. Louis; which were examined, approved and adopted as the assessment of railroad, bridge and telegraph property for the taxes of 1901, as set out in the following tables, and ordered spread upon the record and proceedings of the board and made a part thereof:"

The following table shows the valuation and assessment of the Wiggins Ferry Company railroad tracks, to-wit:

State ex rel. v. Wiggins Ferry Co.

## RAILROAD TRACKS OF THE WIGGINS FERRY CO.

Aggregate and detail description and valuation of property in the State of Missouri, owned by the Wiggins Ferry Company on the first day of June, 1900, as assessed, adjusted and equalized by the State Board of Equalization in 1901.

| County. | Township. | City and town. | Road-bed, superstructure, rolling-stock and "all other property." | | | | Buildings. | | Totals. | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | No. of miles. | Valuation per mile. | Valuation in subdivision. | Valuation in county. | Valuation in subdivision. | Valuation in county. | Value in Subdivision. | Value in county. |
| St. Louis City. | Old Limits | .......... | 3.702 <br> 3.702 | $65,000 <br> 65,000 | .......... <br> $240,630 00 | $240,630 00 <br> .......... | .......... <br> .......... | .......... <br> .......... | .......... <br> $240,630 00 | $240,630 00 <br> .......... |
| Totals...... | ...... | ...... | ...... | ...... | $240,630 00 | $240,630 00 | ...... | ...... | ...... | $240,630 00 |

### ITEMIZED STATEMENT.

| | |
|---|---|
| Length of road in State of Missouri........................ | 3.702 |
| 3.702 miles road-bed and superstructure at $35,000 per mile...... | $129,570 00 |
| "All other property" at $30,000 per mile...... | 111,060 00 |
| Total........ ................ ........... | $240,630 00 |

The following is a copy of the tax-bill sued on, formal parts omitted, to-wit:

FOR RAILROAD, BRIDGE AND TELEGRAPH COMPANY TAXES, FOR THE YEAR 1901, ON PROPERTY IN THE CITY OF ST. LOUIS, AS ASSESSED BY THE STATE BOARD OF EQUALIZATION OF THE STATE OF MISSOURI.

|  | Valuation. | Rate. | Taxes. |
|---|---|---|---|
| State Revenue.......................... .. ......... .. ... | $240,680 00 | .15 | $360.95 |
| State Interest .......... ...................,....... |  | .10 | 240,68 |
| School Tax ......... ..... ......... ....,...... ..... |  | .40 | 962.52 |
| City Tax, New Limits................................ |  |  |  |
| City Tax, Old Limits.... ........ .......... .... .... |  | 1.21 | 2,911.62 |
| Public Free Library ............... ...... .......... |  | .04 | 96.25 |
| Total Tax...................... ..... ........ |  |  | $4,571.97 |

The railroad in question had been regularly assessed by the State Board of Equalization for ten years previous to the one in question, in the same manner and against the same party, and those taxes were regularly paid by it up to the year 1901; but it refused to pay the taxes for that year, and for a recovery of those taxes this suit was instituted.

At the close of the introduction of all the evidence the defendant requested the court to declare the law as follows:

"1.   The court declares the law to be that under the pleadings and the evidence offered by the plaintiff the plaintiff cannot recover,   and the judgment must be rendered in favor of the defendant.

"2.   The court declares the law to be that under the pleadings and all the evidence in the cause the State Board of Equalization of the State of Missouri had no right, power, authority or jurisdiction to assess, equalize or adjust the railroad tracks in the petition described for taxation for the year 1901.

"3.   The court declares the law to be that under the pleadings and all the evidence in the cause, the

State Board of Equalization of the State of Missouri had no right, power, authority or jurisdiction, under the Fourteenth Amendment to the Constitution of the United States, to assess, adjust or equalize the franchise of the Wiggins Ferry Company, or any part thereof, for taxation in the State of Missouri, or taxes for the year 1901.''

The court gave said instructions after striking out the words ''under the Fourteenth Amendment to the Constitution of the United States,'' and the plaintiff preserved proper exceptions to the giving of said instructions.

At the close of all the evidence the cause was submitted to the court sitting as a jury, and its finding, as heretofore stated, was for the defendant and judgment in accordance with such finding was entered of record. A timely motion for new trial was filed and by the court overruled, and from the judgment rendered in this cause the plaintiff prosecuted this appeal, and the record is now before us for consideration.

## OPINION.

### I.

The legal propositions presented by this record are whether or not the three and seven hundred and two one-thousandths miles of railroad belonging to the Ferry Company is a railroad within the meaning of article 8, chapter 149, Revised Statutes 1899, and if so, is it subject to taxation as therein provided. The appellant affirms both of those propositions, while the respondent denies both.

In order to properly determine those questions we must construe and ascertain the meaning of the statutes relating to the assessment and taxation of railroads. Sections 1163, 9338, 9339 and 9344, Revised Statutes 1899, are the principal statutes bearing directly upon the subject, and are as follows:

"Sec. 1163.   The term 'railroad corporation' contained in this chapter shall be deemed and taken to mean all corporations, companies or individuals now owning or operating, or which may hereafter own or operate, any railroad in this State.

"Sec. 9338.   All railroads now constructed, in course of construction, or which shall hereafter be constructed in this State, and all other property, real, personal or mixed, owned, hired or leased by any railroad company or corporation in this State, shall be subject to taxation for State, county or other municipal or local purposes, and taxes levied thereon shall be levied in the manner hereinafter set forth.

"Sec. 9339.   On or before the first day of January in each and every year, the president or other chief officer of every railroad company whose road is now or which shall hereafter become so far completed and in operation as to run locomotive engines, with freight or passenger cars thereon, shall furnish to the State Auditor a statement, duly subscribed and sworn to by said president or other chief officer, before some officer authorized to administer oaths, setting out in detail the total length of their road so far as complete, including branch or leased roads, the entire length in this State, and the length of double or side tracks, with depots, water tanks and turn tables, the length of such road, double or side tracks in each county, municipal township, incorporated city, town or village through or in which it is located in this State; the total number of engines and cars of every kind and description, including all palace or sleeping cars, passenger and freight cars and all other movable property owned, used or leased by them on the first day of June in each year, and the actual cash value thereof.

"Sec. 9344.   The state board for the assessment and equalization of railroad property shall be composed of the Governor, Secretary of State, State Au-

ditor, State Treasurer and Attorney-General, and shall meet annually at the capitol in the City of Jefferson, on the third Monday of April of each year, for the purpose of assessing, adjusting and equalizing the valuation of such railroad property. The said board shall proceed to assess, adjust and equalize the aggregate valuation of the property of each one of the railroad companies in this State specified in section 9339. The board shall have power to summon witnesses by process issued to any officer authorized to serve subpoenas, and shall have the power of a circuit court to compel the attendance of such witnesses, and to compel them to testify; they shall have the power, upon their knowledge, or such information as they can obtain, to increase or reduce the aggregate valuation of the property of any railroad company included in the statements and returns made by the railroad companies and the clerks of the county courts, and shall assess, adjust and equalize any other property belonging to said railroad companies, or property belonging to any railroad companies in this State of the kind specified in section 9339, upon which no returns have been made, which may be otherwise known to them, as they may deem just and right. In assessing, adjusting and equalizing any railroad property for any year or years, the state board may arrive at its finding, conclusion and judgment, upon its knowledge, or such information as may be before it, and shall not be governed in its findings, conclusions and judgment by the testimony which may be adduced, further than to give to it such weight as the board may think it is entitled to: *Provided,* that when any railroad shall extend beyond the limits of this State and into another State in which a tax is levied and paid on the rolling stock of such road, then the said board shall assess, equalize and adjust only such proportion of the total value of all the rolling stock of such railroad company as

the number of miles of such road in this State bears to the total length of the road owned or controlled by such company.''

In order to ascertain the true intention of the Legislature we must construe all the sections of the statute bearing upon the subject in controversy together. This is one of the elementary rules underlying the construction of statutes, and has been stated by an able text-writer in the following language: ''All consistent statutes relating to the same subject, and hence briefly called statutes *in pari materia,* are treated prospectively and construed together as though they constituted one act.   This is true where the acts relating to the same subject were passed at different dates, separated by long or short intervals, at the same session or on the same day.'' [Sutherland, Stat. Construction, sec. 283.]   And, continuing, he says:   ''A statute must be construed with reference to the system of which it forms a part.   And statutes on cognate subjects may be referred to, though not strictly *in pari materia.*''   [Id. sec. 284.]

This rule of construction was quoted with approval in the case of Sales v. Barber Asphalt Co., 166 Mo. 671, and by the Court in Banc in the case of State ex rel. v. Patterson, 207 Mo. 129.

In the light of this rule of construction, we will now determine what railroads are included within the meaning of those sections of the statute.   If we read sections 9338, 9339 and 9344 alone they refer only to such railroads as are owned, hired or leased by railroad companies or corporations, which would exclude all railroads owned, hired or leased by all other companies, corporations and individuals.   But when we read these sections in connection with article 2, chapter 12, Revised Statutes 1899, which is the only law in the State regarding railroads, prescribing how they shall be organized, constructed and operated, as well

as their rights, duties and obligations, and defining the words "railroad company" and "railroad companies," quite a different conclusion might be reached. Section 1163 of said chapter reads as follows: "The term 'railroad corporations' contained in this chapter shall be deemed and taken to mean all corporations, companies or individuals now owning or operating, or which may hereafter own or operate, any railroad in this State."

According to the authorities before mentioned, this section must be construed with and read into sections 9338, 9339 and 9344. By doing so these sections, instead of being restricted to railroads owned by *railroad companies* or *railroad corporations,* would be extended in their operation and include "all corporations, companies, or individuals owning or operating, or which may hereafter own or operate, any railroad in this State." This, we take it, is the clear meaning of the Legislature as expressed in those sections of the statutes when all are read together, as they should be. That which is within the meaning of a statute is as much a part of it as if it were written therein. Judge Scott stated the same rule in this language: "A thing which is in the intention of the makers of a statute is as much within the statute as if it were within the letter." [Riddick v. Walsh, 15 Mo. l. c. 535; Humes v. Railroad, 82 Mo. 227.]

With this construction placed upon sections 9338, 9339 and 9344, they clearly include the road of respondent. But to escape that construction respondent contends that the road in question is not a railroad within the meaning of the railroad laws, but are only loading or storage tracks upon which cars are stored while being loaded and unloaded.

In answer to that contention it may be first said, that the record does not bear out that contention. The evidence shows that they are used not only for those

purposes, but also for regular traffic and switching purposes.   In fact, the plat in evidence shows that respondent's tracks are the only ones extending to the water's edge and over which cars can pass to and from its boats and onto those of the Transfer Company. Besides this, it is conceded that steam engines pass over and draw or push freight cars, loaded and unloaded, over these tracks, not only for storage, loading and unloading, but for all purposes incident to its traffic.

Bouvier's Law Dictionary, page 813, thus defines a railroad:   "A road graded and having rails of iron or other material for the wheels of railroad cars to run upon."   In Doughty v. Firbank, L. R. 10 Q. B. D. 359, a railroad is defined to be "a way upon which trains may pass by means of rails."

There is nothing in these definitions, nor in our statutes, which excludes the idea that a railroad may not be constructed, owned or operated by other persons than railroad corporations.   · Nor is there any legal requirement that a railroad shall be of any particular length.   [Wiggins Ferry Co. v. Railroad, 107 Ill. 450,. l. c. 454.]   Nor is it essential that a railroad should own rolling stock.   [1 Elliott on Railroads, p. 7; Railroad v. Railroad, 118 U. S. 290.]

We entertain no doubt about the road in question being a railroad within the meaning of article 8, chapter 149, Revised Statutes 1899.   But returning to the question of assessment.   This direct question came before this court in the case of State ex rel. v. Railroad, 162 Mo. 391.   In that case the company had owned certain lands for twelve years, a part of them was crossed by switch and side tracks, while other parts and lots were not so used.   The assessor of Buchanan county assessed the vacant lots for taxation under the general revenue laws, and the question there presented

was, should such lots be assessed by the county asses-
sor or by the State Board of Equalization? It should
be added that the railroad company in that case con-
tended that it purchased all of the land mentioned
for railroad purposes and intended to so use it in the
future, as soon as the business of the company de-
manded it. In the discussion of that case this court
said: "In that case [State ex rel. v. Hannibal & St.
Joseph Railroad Company, 135 Mo. 618] it was decided
that the list of railroad property required by section
7718, Revised Statutes 1889 (now sec. 9339, R. S. 1899),
to be furnished the State Auditor as the basis of the
action of the State Board of Equalization, includes not
only the land covered by the right of way of the main
line, depots, etc., but also land covered by side tracks
and used as a switch yard in connection with its traffic
as a common carrier. In that case the following from
the Supreme Court of Illinois was quoted with ap-
proval: 'We are, therefore, of the opinion that the
land held in actual use by a railroad company for side-
tracks, switches and turn-outs, must be regarded, within
the meaning of the revenue laws, as a part of the right
of way of the company.' [Railroad v. People ex rel.,
98 Ill. 357.] The theory of the system of taxing rail-
roads, as contained in our statute, seems to be that the
railroad, with all the necessary appurtenances to its
efficient equipment as a means of traffic, is to be taken
as a whole and assessed for taxation by the State
Board of Equalization. . . . Taking the decision in
State ex rel. v. Hannibal & St. Joseph Railroad, above
cited, as the law of this case, the only question is,
whether these lots are to be deemed as in use by the
defendant for its side-tracks and as a switch yard."
The court then announced its conclusion in that case,
which was that the vacant lots were not assessable by
the county assessor, but should be assessed by the
State Board of Equalization.

There is nothing in the Constitution and laws of the United States which prohibits a State from taxing the property of persons and corporations engaged in foreign and interstate commerce where the property is located in such State; but upon the contrary, the Supreme Court of the United States has repeatedly held that a State may tax all such property which is located in such State. [Western Union Tel. Co. v. Missouri ex rel. Gottlieb, 190 U. S. 412, l. c. 424; State ex rel. v. Western Union Tel. Co., 165 Mo. 502-523; Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196, l. c. 210.]

Measured by the authorities heretofore cited upon the proposition now under discussion, we see no escape from the conclusion that respondent's road was subject to assessment by the State Board of Equalization and not by the city assessor, as contended for by learned counsel for respondent.

## II.

A more serious proposition is involved in respondent's second objection to the validity of a portion of the assessment in question. The contention of respondent is that the record discloses the fact that the $30,000 item assessed against the Ferry Company as the value of "all other proerty" per mile of said road, is a tax against its franchise; that is, a tax against its charter right and privilege to conduct a ferry business across the Mississippi river between East St. Louis and the city of St. Louis.

There is some evidence contained in this record tending to support that proposition; and, if true, the levy would be clearly invalid, for the reason that it would be a tax imposed by a State upon interstate commerce, which is prohibited by the Constitution and laws of the United States. The national government alone is possessed of the power to tax and regulate foreign and interstate commerce. [Gloucester

Ferry Co. v. Pennsylvania, 114 U. S. 196; St. Clair County v. Interstate Land & Car Trans. Co., 192 U. S. 454; Louisville Ferry Co. v. Kentucky, 188 U. S. 385, St. Louis v. Wiggins Ferry Co., 11 Wall. 423; Morgan v. Parham, 16 Wall. 471.] But from an examination of the entire record, owing to the meagerness of the evidence upon that question, and the modification and giving of instructions by the trial court, it is extremely difficult for us to ascertain and determine what the finding of the court was upon that point. The evidence is not clear or satisfactory, and the instructions given do not make manifest the finding of the court or the views of the court as to the law applicable to that particular question.

The court gave for respondent the three instructions heretofore copied; the first two of which are in the nature of demurrers to the evidence, which declared appellant could not recover, while the third as asked declared that under the Constitution and laws of the United States the State Board of Equalization had no authority to assess the franchise of the Ferry Company for taxation; but before giving said instruction the court struck therefrom all that part referring to the Constitution and laws of the United States, thereby leaving the inference that the court was not satisfied that the $30,000 item was assessed against the franchise of the Ferry Company, but that it had been assessed against its other railroad property, which was also invalid, for the reason that none of its railroad property was assessable by the State Board of Equalization but was assessable by the city assessor of the city of St. Louis.

The appellant insists that respondent, under its charter from the State of Illinois, had power and authority to acquire and hold railroad stocks, and that, when it constructed or had constructed the Connecting Company and the Transfer Company and owned all

the stocks of both and consolidated all three of the
companies for traffic purposes and charged one tariff
for transportation over the combined system, for the
purposes of taxation it must be considered and taken as
one entire system of transportation, especially in so
far as regards the property standing in the name of
the Ferry Company, which includes the railroad in
question.

The appellant's oral evidence, while very meager,
tends, however, to prove that "all other property at
$30,000," mentioned in the assessment, was an assess-
ment against the railroad in question for the right
and privilege of constructing, maintaining and operat-
ing the road in this State, in connection with its right
to conduct its business wherever the system of lines
belonging to the three combined companies extend, all
representing a unity of use in the entire corporate
property of the three corporations, thereby making
the same much more valuable than it otherwise would
be for use separately and independently of each other.
The evidence also tends to show that the State Board
of Equalization in arriving at the value of the rail-
road in question, after making an investigation and
hearing evidence, ascertained the kind and amount, as
well as estimated the fair value, of the tangible and
intangible property of the three companies as an en-
tire system of transportation, at a certain sum, not in-
cluding, however, the value of the right of each of
said companies to be corporations.   The board then
ascertained the value of the tangible property of all of
the companies and deducted that sum from the total
value of the tangible and intangible property of the
three companies, thereby fixing the value of the in-
tangible property.   It then fixed the value of the tan-
gible property owned by the Ferry Company and the
Transfer Company which was located in this State,
and assessed the respective amounts thereof against

each. It then divided the value of the intangible property, before mentioned, among each of the three companies in the proportion that the value of each company's tangible property as before assessed bore to the amount of the intangible property. The result of all this was the assessment of respondent's said railroad for the amounts stated in the assessment heretofore mentioned.

As before stated, the oral evidence upon these questions, on both sides, is very unsatisfactory, yet we gather from the whole record, briefs and arguments of counsel on file herein that the foregoing was substantially the process by which the value of the railroad was arrived at, and upon which the assessment in question was based; but whether that be true or not, the law presumes the State Board of Equalization properly performed its duty in that regard. [State ex rel. v. Western Union Tel. Co., 165 Mo. l. c. 516; State v. Lord, 118 Mo. l. c. 4; Agan v. Shannon, 103 Mo. 661.] And there is no substantial evidence preserved in this record to overthrow that presumption.

But counsel for respondent contends that, even conceding the railroad in question was regularly assessed and in the manner before stated, yet he argues that the assessment is invalid for the reason that "the franchises of the Wiggins Ferry Company to operate a ferry across the Mississippi river cannot be attached to the tracks in question since the Ferry Company is incorporated by the laws of the State of Illinois, and its franchise cannot be assessed or taxed in the State of Missouri." In other words, respondent contends that in fixing the value of "all other property" of the railroad, the franchise of the Ferry Company was included in the estimation of the value of the intangible property of the three companies mentioned, and that such value was distributed between those

companies in the proportion that the value of each
road's tangible property bore to the value of the in-
tangible property of the three.

If the facts in the case were as contended for by
respondent's learned counsel, then the legal conclus-
ions stated by him would unquestionably be sound, and
the assessment would be invalid.   [McCulloch v. Mary-
land, 4 Wheat. 316; Hays v. Pacific Mail Co., 17 How.
599; St. Louis v. Wiggins Ferry Co., 11 Wall. 423;
Morgan v. Parham, 16 Wall. 471; Louisville Ferry Co.
v. Kentucky, 188 U. S. 385.]    But from the record
before us we are unable to concur in·the views that the
value of the franchise of· the Ferry Company was in-
cluded in the board's estimate of the value of the in-
tangible property of those companies.    Our under-
standing of the evidence is that the franchises of all
three companies, that is, the rights to be a corpora-
tion and to conduct a ferry and a railroad business,
were excluded from that estimate; but the value of the
rights and privileges of those companies, acting in
unison as one company, to construct, maintain and
operate a system of railroad in this State in · connec-
tion with and a part of a system in another State,
was ·included in the valuation upon which the assess-
ment was based.

This question came squarely before this court in
the case of State ex rel. v. Western Union Tel. Co., 165
Mo. 502.    It was there held, "First, that the Western
Union Telegraph Company is, as between governmen-
tal departments, a governmental agency, but is not so
as between the company and a State or a citizen; sec-
ond, that the telegraph company is an instrument of
interstate commerce, and has a right to enter a State
and transact business; third, that the telegraph com-
pany being an instrument of interstate commerce and
deriving its powers in this regard from the United
States, no State has a right to prevent such company

from doing business in the State, for that would be an interference with interstate commerce; fourth, that the tangible property of the telegraph company located in a State is subject to taxation like any other property in that State, and its franchise or right derived from the Act of Congress of 1866 does not exempt such property from taxation by the State in which such property is located; fifth, that in determining the value of the tangible property of the company located in any State, it is proper to compare the length of its lines in that State with the length of its entire lines, or to take the aggregate value of the shares of its capital stock, and deduct therefrom such portion of that valuation as is proportional to the length of its lines without the State, and also to deduct therefrom the value of its real estate and machinery subject to local taxation within the State. And that such taxes, so assessed, constitute an excise tax upon the property or capital of the corporation and not a tax upon any franchises of the corporation." That case went to the Supreme Court of the United States and was affirmed by that court, and is reported in the 190 U. S. 412.

There is but one difference in the facts of that case and the one at bar. In that case there was but one corporation, which was conducting a telegraph business through the several states and territories of the Union, as well as in foreign countries; while in this case there were three corporations, the stock of all of which was owned by the Ferry Company, and by some agreement among themselves, they consolidated the ferry with the railroads into one continuous system of transportation, with various railroad branches switches, side-tracks and turn-outs at each terminus thereof, connecting with the various railroads on each side of the river, for the purpose of receiving from and delivering cars to such roads, and for the purpose of furnishing its customers with storage and side-

tracks for loading and unloading cars.    For this ser-
vice but one tariff is charged, which includes all rail-
road and ferry charges, which goes into one and the
same treasury.

We are clearly of the opinion that the legal prop-
ositions announced in the case of State ex rel. v. Tele-
graph Co., supra, are applicable to this case.    The
method adopted in estimating the value of the property
is the only way in which the true and full value can be
reached; that is, in estimating such value it is proper
to take into consideration, not only the rights and
privileges the company is exercising in this State and
the property actually located therein, but as well its
connection and relation to other property which is not
located in this State, but which, however, is used in
the system of work with the property which is taxable
in this State, thereby giving it a value which it other-
wise would not have if considered abstractly and sep-
arate and distinct from any connection with the sys-
tem of work to which the property in this State is
connected and related.    As was ruled in the Telegraph
Company case, the property, by reason of its relation
and connection with other property which may be lo-
cated in another State and used as a system in the
carrying on of a business, has a much greater value
than the sum of the value of the same individual thing
constituting the property regarded merely as such.    In
other words, it is perfectly legitimate in estimating the
value of the property of the respondent in this State,
to take into consideration the value such property de-
rived from its use in a system of doing business by
reason of its connection with and relation to other
property of the respondent, which may be located in
another State.

This court, in the Western Union Telegraph Com-
pany case, in discussing the subject as to the method
of estimating the value of property located in this

State, thus indicated the method that should be adopted in determining such value. It was there said: ''In determining the value of the property of the defendant in this State, the board of equalization took into consideration 'the cost of construction and equipment of said Western Union Telegraph Company, and the location thereof, and its traffic and business, and the par value of its stock and bonds, and the gross receipts and net earnings and franchises owned by said company, and the value thereof,' it did not and could not have included therein any franchise derived by the defendant from the Government of the United States, because that Government had conferred no such franchise; nor was such a valuation placed upon 'all other property,' a tax upon the franchise of the defendant company. The franchise derived by the defendant from the State of New York was considered by the board in determining the value of the property of the defendant located in this State. That is, that property was valued, not as so many poles, so much wire, so many instruments or so much 'other property,' in the abstract, but was valued in the concrete, in the relation that such property in the abstract bore to other property in the abstract, which being brought into relation towards each other—into a *system,* located partly in this State and partly in other States— gave each part a concrete value, which was much greater than its abstract value. The right to exist—the franchise—of the defendant was property, and was subject to taxation, either directly, in the proportion that the portion of the franchise exercised in this State bore to the proportion of the franchise exercised in other States, or indirectly, as was done in Massachusetts and was done here, by being impressed upon the tangible property owned by it, thereby increasing its value, and by considering the franchise and its tangible property as a system, and then assessing the part of the property forming a part

of the system and located in Missouri as of its proportionate value of the whole property constituting the system. This was expressly held to be proper in Western Union Tel. Co. v. Mass., 125 U. S. 530."

If those three companies were separate and distinct, with their stock belonging to different persons, quite a different question would be presented; but under the facts of this case, we are of the opinion that it falls within the principle above indicated as announced in the case of State ex rel. v. Western Union Tel. Co., supra.

The conclusions reached upon the proposition now under discussion, not only find support in the case of State ex rel. v. Western Union Tel. Co., but as well in the cases of Western Union Tel. Co. v. Massachusetts, 125 U. S. 530, and the case between the same parties in 141 U. S. 40.

If the facts of this case are as we understand them to be, then we are clearly of the opinion that the assessment is valid and that the taxes should be paid, but, if upon another trial it should be shown that the assessment included the value of the franchises of the Ferry Company or that of the Connecting Company, then the assessment upon which the $30,000 item is based, if predicated upon the value of such franchises, is invalid, and the taxes based and extended upon that item cannot be collected. That question should be submitted to the jury for their determination upon the evidence and under proper instructions of the court.

## III.

The appellant complains of the action of the trial court in excluding evidence offered by it for the purpose of showing that the Ferry Company owned all the stock of the two railroad companies, and that all three were working in unison as one transportation company. While those facts were established by the evidence

subsequently admitted by the court, yet it was error for the court to exclude the evidence offered upon those questions, and such evidence should have been admitted at the time it was offered.

We have indicated our views upon the legal propositions disclosed by the record before us, which results in the conclusion that the judgment of the trial court should be reversed and the cause remanded for a new trial in accordance with the views as herein expressed, and it is so ordered.

All concur.